Biciiakdson, J.,
delivered the opinion of the court:
The findings of the court present a case of hardship to the claimant and of corresponding benefit to the defendants. An officer of the Army in command of a military post in unsettled territory, finding it necessary to send supplies to a fort ninety miles further within such territory, surrounded by Indians, in. an emergency impressed into the service of the United States twenty-four ox-teams, with all their accompaniments, belonging to the claimants’ firm, and used them for the transportation of the necessary supplies without the consent and against the protest of the claimant or of his wagon-master in charge of the train. The principles of law as well as the dictates of natural justice raise an implied promise in such case to compensate the owner for the use of his property which the defendants have thus had the benefit of. It would be so in like transactions between individuals if the injured party chose to waive the tort and bring his action upon an implied assumpsit; and it is no less so when the United States are parties, since the Constitution has guaranteed to all that private property shall not betaken for public use without just compensation. (Arndts, to Const., Art. Y.)
*71 Tlie claimant is therefore entitled to judgment unless barred therefrom by other circumstances relied upon by the Assistant Attorney-General as a defense, which we shall consider.
The facts more fully yet concisely stated are these:
In the year 1867, Wells, Fargo & Co. entered into a written contract with the United States to transport all such military stores and supplies, to the extent of thirty millions of pounds, as should be turned over to them for transportation within a largo territory therein described, and embracing parts of the State of Nebraska and the Territories of Dakota, Montana, Idaho, Utah, and Colorado. A requisition having been made upon, them to furnish transportation for 130,213 pounds of supplies from North Platte, Nebr., to Fort Phil. Kearney, Dak., they entered into a written contract June 29, 1867, with Mason & Co., the claimants’ firm, to perform that particular service “in accordance with all the conditions and upon all the liabilities contained and assumed by Wells, Fargo & Co.,” in their said .contract. Mason & Co.’s teams were accepted by the quartermaster, and the supplies were duly transported by them to Fort Phil. Kearney in accordance with Wells, Fargo & Co.’s contract, where they were nearly all unloaded and delivered, when the commander of that fort found it necessary to send supplies forthwith to Fort Smith, a military post in Montana Territory, distant ninety miles.
The agent of Wells, Fargo & Co. applied to the claimants’ wagon-master, who was in charge of their train, to take on those supplies and proceed with them to Fort Smith,' offering him increased compensation therefor. This the wagon-master refused to do, because his employers were under a contract with the United States to supply wood and hay at Fort Laramie, and depended on this train for use in fulfilling that contract ; besides, the men were not hired to go farther, and some of them had entered into other engagements. The commander of tlie fort, after having been informed of these facts and having made ineffectual attempts to induce the claimants’ wagon-master to load his teams and proceed, ordered a military wagon-master to take possession of the train and perform the service therewith. The men proving unruly, this last order was abandoned, and the following peremptory order was issued to the claimants’ wagon-master:
*72 “ Headquarters Post,
11 Fort Philip Kearney, JD. T. 23d Aug., 1867.
“ Mr. Patterson,

uIn charge of train :

“ Sir : The commanding officer directs that you move out of the post with escort awaiting you rvithin a half an hour. In the event of your failing to move, you Will be dealt with in such manner as your tardiness merits.
“A. II. BOWMAN,

uJLt. (& Post AdfntP

Patterson, submitting to superior force and under protest, loaded his train with supplies which were in part those he had brought there and in part other and different supplies, and transported the same to Fort Smith, under military escort, refusing to sign any bill of lading.
Wells, Fargo & Co.’s agent signed the bill of lading, and they have been paid as though the service had been performed by them.
All this took place without the knowledge of Mason & Co., who thereafter, when the facts became known to them, demanded payment from the defendants for the use of their teams, but they have never been paid, either by the defendants or by Wells, Fargo & Co.
Two grounds of defense are set up on these facts:
First. That the contract of Mason & Co. with Wells, Fargo* & Co. was a transfer, so far, of the latter’s contract with the United Statess, or of an interest therein, contrary to the terms of the statute (now Eev. Stat., § 3737).
A conclusive answer to this proposition as a defense is, that the claimant does not bring his action upon either of those contracts, does not make any claim against the United States thereon, and, by the very terms of the contract itself, he was to look entirely to Wells, Fargo & Go. for payment of whatever service was performed thereunder. The present action is upon an implied contract by the defendants for services performed outside of the claimants’ contract with Wells, Forgo & Co., and upon a route not included therein.
Second. That the claimants, by their said contract with Wells, Fargo & Co., having bound themselves to transport the stores and supplies “in accordance with the conditions and upon the liabilities contained and assumed ” by the latter in their con *73 tract witli tbe Government, took upon themselves the obligations of Wells, Fargo & Co. to transport these stores to any point within the territory described in their contract, under the provisions of article 14, which sets forth that “ it is understood that if at any time stores or supplies are required to be transported back to any point on the road, or to any of the original points of departure, or from one point to another within the route, they shall be carried on the same terms and conditions as herein provided,’ or that they assumed the still greater liability of putting under the control of Wells, Fargo & Co., and through them under the control of the defendants’ officers, the twenty-four os-teams of the claimants, for any use contemplated by Wells, Fargo & Co.’s contract.
This ground is wholly untenable, because the claimants’ agreement was limited by its very terms to the transportation of supplies from North Platte to Fort Philip Kearney and to the delivery of the same at the latter place, and it is manifest that the conditions and liabilities contained in the Wells, Fargo & Co. contract therein referred to were those only which were applicable to the transportation thus expressly agreed to be performed, such as that the means of transportation should be submitted to an officer or agent of the Quartermaster’s Department, and only such used as should be accepted by him, as provided in article 6; that all stores should be delivered in reasonable time after being turned over to the contractors, not to exceed ten days per hundred miles for mule-trains, and fourteen days per hundred miles for ox-trains, as provided in article 12; that in case of loss or damage to the stores, the contractors should be liable in the cases specified in article 7 and other provisions of like application to each particular case of transportation.
But conceding that the claimants did assume all the liabilities of Wells, Fargo & Co., still the defendants were at fault and could not claim and demand the service of these teams even had they belonged to the original contractors, since by article 4 of the contract Wells, Fargo & Co. were entitled to fifteen days’ notice whenever they were required to transport any quantity of stores less than three hundred thousand pounds, and in the present case the notice was to start in half an hour. Had the notice required by the contract been given, other *74 arrangements might perhaps have been made, and the claimants’ teams might not have been thus pressed into service.
So from every point of view we find that the defendants had no claim upon Mason & Co. to transport the supplies from Fort Kearney to Fort Smith $ and, having required them to perform that service, they are legally bound to pay therefor.
The commander of Fort Kearney no doubt did what he considered best for the Government in the pressing necessities of the case, and no blame is imputed to him. Military officers in command of distant posts in unsettled territory must often be compelled to take responsibilities and create liabilities which under other circumstances would not be justified, and if they exceed the just limit which their superiors approve they may be tried by court-martial therefor, but innocent parties who are obliged to submit to the force of military authority must not suffer.
The judgment of the court is that the claimants recover the sum of $6,048.