[No. 1283.]

H. F. ROSS, RESPONDENT, *v.* BANK OF GOLD HILL, ET ALS., RICHARD MERCER AND C. C. STEVENSON, APPELLANTS.

BANK CORPORATIONS—STOCKHOLDERS—LIABILITY FOR UNPAID SUBSCRIPTION—EVIDENCE—OPTION.—In an action by a creditor of a bank against the subscribers to its capital stock, as to one defendant, it was proved that, at the organization of the bank, he paid two hundred dollars and took from its officers a certificate to that effect, and that upon the payment of the "balance due" he would be entitled to twenty shares, at one hundred dollars each. Defendant testified that he regarded the transaction as an option giving him the right to take the stock by the payment of the residue, or forfeit the amount paid. It was proved that the bank received the money as part of its capital, and the managing officer testified that there were one thousand eight hundred dollars yet due. The bank kept no subscription book. *Held*, that the evidence showed defendant to be a subscriber.

IDEM.—As to another defendant, in such case, it was shown that he paid in ten per cent., and took a similar certificate; that he was one of the incorporators, and kept an open account at the bank for several years after its organization. Defendant testified that the money paid was a loan to one of the officers of the bank for which he had demanded payment before the bank's complications. The officer referred to testified that the money was paid upon the capital stock of the bank. *Held*, that as to this defendant the evidence was also sufficient to show him to be a stockholder.

IDEM—ILLEGALITY OF ORGANIZATION.—It is no defense in such action that the by-laws and stock subscriptions were illegal, because the trustees were not stockholders; the alleged subscribers having acquiesced in the acts of such trustees for years, and allowed themselves to appear as subscribers.

IDEM—BANKS AND BANKING—SAVINGS BANKS—STATUTES CONSTRUED.— Whether such bank was organized under Gen. Stat. 948-974, providing for the organization of corporations to aggregate, save, and invest the funds of members, and prohibiting the issue of certificates of shares until all the subscription should be paid, and providing that stock should not be considered as acquired until payment in full, or under the general incorporation act, (Gen. Stat. 802-829,) is immaterial, as it was the duty of subscribers under the former act to have paid their subscription in advance, and not having done so, they are still liable.

APPEAL from the District Court of the State of Nevada, Storey county.

RICHARD RISING, District Judge.

The facts are stated in the opinion.

*Stewart & Coffin,* and *Thos. H. Wells,* for Appellants.

I.   This case is entirely dissimilar in its facts from *Thompson* v. *Reno Sav. Bank,* 19 Nev. 103, 3 Am. St. Rep. 797. (Evidence in each case reviewed and distinctions pointed out.)

In this case the evidence fails to show that there ever was any legal board of trustees, any legal by-laws, and any legal subscription for stock, or any book open for stock subscriptions.

II.   The corporation defendant in this case was organized, if at all, under the act of March 5, 1869. (Gen. Stat. 948, *et seq.*) Being so organized, there was only one method by which a party could become a stockholder in the corporation; and that mode is plainly pointed out in section 22 of said act. This provision was placed in the act for a salutary purpose. It was intended to prevent individuals from forming banking corporations, and doing business without fully paid-up capital stock. It is a mandatory, not a directory, provision.

III.   Neither of the defendants was a subscriber to the stock of the Gold Hill Bank. The paper issued to them was simply an option to obtain the stock of the corporation upon the payment of the sum therein named.

There must be a contract of subscription to the stock of a company by the party himself or his authorized agent, or the ratification of the unauthorized act of another. (*McClelland v. Whiteley,* 15 Fed. Rep. 322.)

Putting the name of an alleged subscriber upon the books of a company does not render him liable to creditors for a subscription. (*Cook v. Chittenden,* 25 Fed. Rep. 544; *Mudgett* v. *Horrell,* 33 Cal. 25.)

The defendants not having entered into a contract for subscription are not liable as stockholders unless they were held out to the public as such, with their knowledge and consent. (Thomp. Liab. Stock., Sec. 174.

Only those who are subscribers to the stock, or become stockholders by transfer and acceptance by them of stock, are stockholders. (Cook Stock., Sec. 4, note 2.)

*R. S. Mesick, M. N. Stone*, and *W. E. F. Deal*, for Respondent.

I.   The evidence fully supports the findings of facts and judgment.   There was not a particle of evidence that supported any defense made by the defendants who appeal.

They were subscribers to the stock of the corporation, or were by their acts estopped from denying that they were by their dealings with the corporation.

II.   The district court in its decision followed the principles of law laid down by this court in similar cases, and its decision is in accordance with the decisions of the courts of the country. (*Thompson* v. *Reno Savings Bank*, 19 Nev. 103; 3 Am. St. Rep. 797; *Harmon* v. *Page*, 62 Cal. 448; *Henry* v. *Vermillion etc. R. R. Co.*, 17 Ohio, 189; *Haskins* v. *Harding*, 2 Dill. 106; *Hatch* v. *Dana*, 101 U. S. 205; *Instone* v. *Frankfort B. Co.*, 2 Bibb (Ky.) 576; 5 Am. Dec. 638; *Scoville* v. *Thayer*, 105 U. S. 155; Thomp. Stock., Sec. 15; *Ward* v. *Griswoldville Mfg. Co.*, 16 Conn. 598; *Mann* v. *Cooke*, 20 Conn. 178; *Holmes* v. *Sherwood*, 16 Fed. Rep. 729; *Chubb* v. *Upton*, 95 U. S. 669; *Wheeler* v. *Millar*, 90 N. Y. 357; *Griswold* v. *Seligman*, 72 Mo. 110.)

III.   The court did not err in admitting in evidence the various books and documents objected to by defendants, and even if it did the error could not and did not affect the result. (*Phipps* v. *Hully*, 18 Nev. 140; Thomp. Stock., Sec. 177; *Hoagland* v. *Bell*, 36 Barb. 57; *Highland Turnpike Co.* v. *McKean*, 10 Johns. 153; 6 Am. Dec. 324; *Turnbull* v. *Payson*, 95 U. S. 421; *Graff* v. *Pittsburgh R. R. Co.*, 31 Pa. St. 495; *Weber* v. *Fickey*, 52 Md. 500; *Wheeler* v. *Millar*, 90 N. Y. 357; *Griswold* v. *Seligman*, 72 Mo. 110; *Singer* v. *Given*, 61 Iowa, 93; *In re Glen Works*, 20 Fed. Rep. 674; *Lee* v. *Imbrie*, 13 Or. 510; *Iron* v. *M. Bank*, 27 Fed. Rep. 591; Gen. Stat. 817; *First Nat. Bank* v. *Drake*, 29 Kan. 325; 44 Am. Rep. 646; *German Savings Bank* v. *Wulfekuhler*, 19 Kan. 64; *Merchants' Bank* v. *Rudolf*, 5 Neb. 527; *Martin* v. *Webb*, 110 U. S. 14; *Bank of U. S.* v. *Dandridge*, 12 Wheat. 64; Morse Bank. 118.)

IV.   In suits of this character, irregularities, errors and defects in corporate proceedings, the law charges to the stockholders and not to creditors.   (Wal. Pol. Cont. 665.)   They afford no excuse to shareholders or subscribers for keeping from creditors the property of the corporation.   (*Ossipee etc., Mfg. Co.* v. *Canney*, 54 N. H. 312; Mor. Corp., Sec. 755; Cook Stock., Secs.

183-185; Thomp. Liab., Secs. 407, 408, 409, 412, 414; *Chubb* v. *Upton*, 95 U. S. 667; *Upton* v. *Englehart*, 3 Dill. 496; *Upton* v. *Hansbrough*, 3 Biss. 422; *McCarthy* v. *Lavasche*, 89 Ill. 270; 31 Am. Rep. 83.)

By the Court, Belknap, J.:

This is a suit in equity brought by a judgment creditor of the Bank of Gold Hill, an insolvent corporation, against defendants, Mercer, Stevenson, and Blauvelt, to enforce payment of a balance due from each of them upon his subscription to the capital of the bank. The bank was organized in the year 1879, under the laws pertaining to corporations, with a capital of two hundred and fifty thousand dollars, divided into two thousand five hundred shares of the par value of one hundred dollars each. The subscribers to the stock of the corporation paid ten per cent. of the face value of their shares, but no more; and with this amount of capital paid in, the bank commenced business, and continued therein until the sixth day of December, 1886, when it failed. Respondent recovered judgment in the district court against each of the defendants for the amount of his unpaid subscription; that is to say, against defendant Stevenson, who was adjudged to have been a subscriber to the extent of twenty shares, one thousand eight hundred dollars; against defendant Mercer, who was adjudged to have been a subscriber to the extent of one hundred shares, nine thousand dollars; and against defendant Blauvelt, who was adjudged to have been a subscriber to the extent of fifty shares, four thousand five hundred dollars. Defendants Stevenson and Mercer appeal.

In their behalf it is urged that the evidence fails to establish a subscription to the capital of the corporation. The determination of this point involves a consideration of some of the facts established at the trial. The corporation did not keep a subscription book, and no express agreement to subscribe was proven. On the third day of May, 1879, defendant Stevenson paid two hundred dollars to the bank, and received therefor a certificate in the following form:

| CAPITAL STOCK, $250,000.00. Incorporated Under the Laws of the State of Nevada. 2,500 SHARES, $100 each. | No. 8.    Incorporated July, 1879.    20 Shares. GOLD HILL, NEV., May 3d, 1879. This certifies that C. C. Stevenson, having paid the sum of two hundred dollars, is entitled to twenty shares of the capital stock of the BANK OF GOLD HILL, on payment of the balance due thereon, and surrender of this certificate properly indorsed. M. G. STANDISH,        W. H. BLAUVELT, Secretary.                    President. |
| --- | --- |

He testified that he considered this certificate an option, by which he had the privilege, upon paying the balance of one thousand eight hundred dollars, to receive a certificate for twenty shares of stock; otherwise the two hundred dollars would be forfeited. This construction he deduces from the language of the certificate. It does not admit of this construction. The language implies that the sum of two hundred dollars had been paid for twenty shares of stock, and that there was a "balance due thereon." If, after payment of two hundred dollars, there was a balance due upon the transaction, it naturally was a purchase. An option in the purchase of stock is a privilege to be exercised within a stated time. Time is of the essence of contracts of this nature. The two hundred dollars was received by the corporation as a part of its capital, and Mr. Blauvelt, the managing officer, testified that one thousand eight hundred dollars was due upon the transaction. The testimony pertaining to defendant Mercer was that he was one of the incorporators of the bank; that he was elected a trustee upon its organization, but gave little attention to its affairs; that he had an open running account with it from October, 1879, until June, 1883; that he paid the sum of one thousand dollars, which was applied to the capital of the bank, and received a certificate for one hundred shares of stock *mutatis mutandis*, as above set forth. In his own behalf he testified that the one thousand dollars was a loan made to defendant Blauvelt, and that long before the bank's complications he had requested payment. Mr. Blauvelt's testimony was that the

one thousand dollars was received in consideration of the issuance of the certificate for one hundred shares of stock. The district court found as a fact that each of the appellants had agreed to take the amount of stock represented by his certificate. This conclusion is supported by the direct testimony of Mr. Blauvelt, and by the conceded facts of the case. Appellants as well as the other subscribers, received certificates of stock upon which one installment had been paid, and which declared that upon the payment of the balance the holder would be entitled to full paid stock. They thus became, to all appearances, stockholders, and so remained, holding their certificates of stock down to the time of trial of this suit. Creditors of the bank had the right to assume that its capital was what it purported to be, and that those who appeared to be stockholders during its solvency would be held as such in the event of its failure. And, besides this, each subscriber to stock is interested in having every other subscriber bear his proportionate share of liability; and any subscriber might well have presumed that he stood upon the same footing as all the others, and that no undisclosed arrangement would relieve any one from the responsibility he had apparently assumed.

Objection to the judgment is made upon the ground that the 'trustees were not stockholders, and therefore not legally qualified to act as trustees, and that the by-laws adopted by them and the stock subscriptions taken by them are illegal. If there is merit in the point, defendants could have escaped responsibility by prompt measures to repudiate their contracts. But for more than seven years they were to all external appearances stockholders. During all that time they were in a position to participate in the profits which might have arisen from the business in which the bank was engaged. It had received their money, and could not have excused itself from allowing them to share profits by setting up its own irregularities. Failing to avail themselves of their defense (if any they had) before the failure of the bank and the rights of creditors attached, their contracts must be held binding.

2. Counsel for appellants contend that the bank was organized under the law entitled " An act to provide for the formation of corporations for the accumulation and investment of funds and savings," approved March 5, 1869. (Gen. Stat. 948–974.) This act by its first section provides: " Corporations for the purpose of ag-

gregating the funds and savings of the members thereof, and others, and preserving and safely investing the same for their common benefit, may be formed according to the provisions of this act; and such corporations, and the members and stockholders thereof, shall be subject to all the conditions and liabilities herein imposed, and to none other." And by section 22: " No certificate representing shares of stock shall be issued, nor shall such stock be considered as acquired until the whole sum of money which such certificate purports to represent shall have been paid into the corporation." From these provisions it is claimed that appellants could not have been stockholders, since they had not fully paid for their stock, and that the statutory requirement concerning full payment for stock is one of the conditions contemplated by section 1, and a limitation upon the liability of appellants. It is unnecessary to decide whether the bank was organized under the law of March 5, 1869, which contains the provisions above quoted, or under the law entitled "An act to provide for the formation of corporations for certain purposes," approved March 10, 1865, (Gen. Stat. 802–829,) which does not contain such provisions. If the requirement is applicable to the stock of the defendant bank, it was the duty of appellants to have paid the amounts adjudged to be due at the organization of the corporation. Not having paid when they should have paid, they cannot take advantage of their own wrong, and escape payment altogether. Section 22 was not intended to exempt a subscriber from the payment of his subscription. Its purpose is probably two-fold: (1) To protect the public against dealing in certificates representing shares of the capital stock of savings banks until the money which the certificates represent shall have been paid into the capital of the bank; and (2) to secure a paid-up capital to savings banks. The judgment and order of the district court denying a new trial are affirmed.

By Leonard, C. J., concurring:

I concur in the judgment.