Graiiam, Judge,
dissenting:
In view of the situation which developed in this case by reason of the Government’s retention of and failure to return or pay for the property it does not seem necessary to pass upon the question of whether, as a third party to the contract between the plaintiffs and Bates & Rogers Co., it secured any rights under it. The considerations and conclusions hereinafter presented do not seem to render this necessary for the reason that if the Government secured a right of option to purchase under this contract and did not exercise the option, it secured no rights and the situation is *177 as if it had never possessed any rights under the contract. If it did not secure any rights under the contract the same situation is created. In both instances, the matter comes back to the question whether the Government having had the property delivered to it under an error and misconception as to its rights by the bailee, and having retained the property and refused to return it, is liable on an implied promise to pay its value.
It must be borne in mind that this contract did not purport and did not attempt to confer upon the United States anything but a mere privilege to purchase. It was not a sale, and for this option as between the plaintiff and the United States no consideration passed from the United States. It secured an option, if it secured anything, without having given any consideration therefor or without any consideration appearing.
“An option is not an actual or existing contract, but merely a right reserved in a subsisting argument. In a certain sense an option is a mere pollicitation, a promise without mutuality, not yet ripened into a perfect agreement. It is a proposition by one party to a contract, which must be accepted in precise terms by the other in order that it may be binding upon both parties.” Rivers v. Oak Lawn Sugar Co., 52 La. Ann. 762.
“An option is an unaccepted offer. It states the terms and conditions on which the owner is willing to sell or lease his land, if the holder elects to accept them within the time limited. If the holder does so elect, he must give notice to the other party, and the accepted offer thereupon becomes a valid and binding contract. If an acceptance is not made within the time fixed, the owner is no longer bound by his offer, and the option is at an end.” McMillan v. Philadelphia Co., 159 Pa. 142.
“An option is, in a sense, a continuing offer of a contract ; and if the offeree decides to exercise his right to demand the conveyance, or other act contemplated, he must signify that fact to the offeror.” Sixer v. Glark, 116 Wis. 534.
“An option is nothing more than a continuing offer to sell; but until it is accepted it does not become a contract of sale * * *. It is only when there has been an acceptance of a proposal to sell that the vendee becomes in any sense the equitable owner of the subject matter of the *178 option.” Milwaukee Mechanics Ins. Co. v. Rhea do Son, 123 Fed. 9, 11.
“ The offeree must accept within the specified time.” Johnston v. Trippe, 33 Fed. 530, 536.
“Where the buyer has an option and.elects to purchase he must tender the money according to the terms of the contract.” Watts v. Kellar, 56 Fed. 1, 4.
“ Time is of the essence of contracts of this nature.” Ross v. Bank of Goldhill, 20 Nev. 191.
Assuming that the defendant had the right to purchase, it could only acquire a right of possession by complying with the terms of the option of purchase. That is to say, by first paying the price at the time fixed for the exercise of the option, which was when the whole work was completed. It failed to pay the price and took over the property nearly a month before the work was completed. It could only exercise its option at the time fixed and an attempt to exercise it before that time gave it no rights in the property. It would make no difference whether it was a day or a month before. So that in any aspect of the matter, assuming that the defendant had acquired rights under the contract between the plaintiffs and the Bates & Bogers Construction Co., it never legally exercised those lights, and at no time acquired title to or right of possession of the property and possessed neither at the time it was taken over, the property being at that time the undisputed property of the plaintiffs.
However, assuming for present purposes the Government’s right to recover as a third party under the contract between the plaintiffs and Bates & Rogers and, also, that the decisions of the Pennsylvania courts where the contract was made and where the property was located and where the act creating the controversy occurred do not control, let us proceed to consider the case free from these questions and on the assumption that the Government acquired an enforcible right under the contract between the plaintiffs and Bates & Bogers. It is important to have the facts here clear and to analyze them properly in order to reach a proper conclusion.
1. The property in question here was originally owned by the plaintiffs. It delivered it to the Bates & Bogers *179 ■Co. under an informal contract of bailment for hire by which it was agreed that the Bates & Rogers Co. was to pay a rental of $25 per day and return the property at the end of the bailment period to the plaintiffs, paying the expenses of transportation and cost of shipment both ways.
2. Subsequently the parties entered into a written contract upon the statement of the Bates & Sogers Co., a cost-plus contractor with the Government, that certain provisions and forms were required by the department. This contract was executed by the plaintiffs, and for the purposes of the discussion, it is assumed, conferred a certain right on the Government, which was not a party to the contract, as a third party.
8. What was that right? It was an option to ‘purchase the property when the whole work under the cost-plus contract with Bates & Rogers had been completed, and not, it is to be borne in mind, when the work for which the shovel was being used had been completed. This option of purchase was to be exercised before the Government obtained any rights in the property or control over it. The price to be paid was fixed as the difference between the appraised value of the property, $5,000, and the amount of rental which had been paid up to the time that the Government exercised its right of purchase.
4. Did the Government decide- to exercise its right of' purchase? It did. Did it exercise that right in accordance with the provisions and terms of the contract? It did not, as the following facts will show:
■ Bearing in mind that it had a right of purchase upon paying the difference between the rental paid and the appraised value, which difference was $775, when did it acquire this right? When the work on the whole contract was completed. When was this work completed? It was completed about December 2. When did the Government receive the property from the bailee? About November 2, one month before the time fixed for the exercise of its option. When it received the property did it pay the price, $775, which it was required to pay in order to become the purchaser of it? It did not. Has it ever paid that price? It has not. It therefore seems clear that the Government in *180 failing to exercise its option according to its terms stands in the same position as if it had never had an option. It stands in the position of having .received this property which was delivered to it by Bates & Bogers, the bailee, under a mistaken view of the rights of the United States, and the United States received it under a similar error.
5. If the Government had no right to receive this property, having- no property interest in it, and it being still the property of the plaintiffs, and the Bates & Rogers Co. having no right to deliver it, what became the duty of the Government ? As between individuals, and the Government can claim under the circumstances of this case no higher privilege or right, it would have been the duty of the party illegally receiving and holding possession of property to have returned it; and if it refused to return it and had appropriated it to its own use it would have been liable for its value under an implied contract. Did the Government return the property? It did not. Did it refuse to return it at the demand of the plaintiffs? It did. Has it since retained and used it, and appropriated it to its own use? It has. It would seem under the law that under these circumstances there arose an implication of an obligation to pay the value of the property. It will therefore be readily seen that the liability of the Government grows out of its retention of the property erroneously delivered to it by the bailee and its refusal to return it, and not out of the manner in and circumstances under which it received possession.
6. ITow did this property come into the possession of the defendant? The Bates & Rogers Co. erroneously believing that the Government had an option of purchase wrote and asked the local representative of the Government whether the Government intended to exercise this option. The local representative recommended that the Government should, and forwarded his recommendation to the department in Washington indorsed on the letter of Bates & Rogers Co. The proper official of that department approved the recommendation and directed that the option of purchase be exercised. Thereupon the local representative by letter instructed Bates & Rogers to deliver the prop *181 erty to the representative of the Government in another?" State by shipping it there, and this was done on November" 2, 1919, one month before the Government had any right to receive the property under its option of purchase. Having no right at the time of its exercise, its attempt to exercise it was void, a nullity, and created no right under the contract. Delivery of the property to the Government by Bates & Bogers one month before the legal time for the exercise of the option was unauthorized, and the retention of the property and the appropriation of it by the Government to its use was illegal in the sense that the property had been delivered to it by mistake, and its retention of possession when it had no right to possession was simply an appropriation of the plaintiffs’ property to public use, without its consent.
7. What under the decisions is the legal liability of the Government under these circumstances? It received property of a third party delivered to it by mistake. It refused to return the property to the owner and appropriated it to public use. It has received the benefit and the owner has sustained the loss. Having appropriated private property in its possession to public use there will arise an implication under the fifth amendment to pay just compensation, which, is its fair value, and this is conceded to be $5,000. See Salomon v. United: States, 7 C. Cls. 482, 19 Wall. 17; and Peck v. United States, 14 C. Cls. 84; 102 U. S. 64.
This last case was a case where property of the plaintiff, after he had refused to rent it to the Government, was taken by a subordinate officer of the Government without authority to act, without his knowledge or consent, and used for public purposes in Government work. It was a hay press. It was held that he could recover the value thereof and not the rental value. This cuse was decided, as stated in the opinion, upon the principles announced dn the case of Mason v. United States, 14 C. Cls. 59, 70, which was a case of taking property consisting of ox teams and the services of the. owner in connection therewith without his consent and using them for public purposes against his protest and under threats. Justice Bichardson in delivering the opinion of the court in this last case said:
*182 “ The principles of law as well as the dictates of natural justice raise an implied promise in such case to compensate the owner for the use of his property, which the defendants have thus had the benefit of. It would be so in like transactions between individuals if the injured party chose to waive the tort and bring his action upon an implied as-sumpsit; and it is no less so when the United States are parties, since the Constitution has guaranteed to all that private property shall not be taken for public use without just compensation.”
If it be urged under the facts heretofore stated that the action of the Government in retaining the property was tortious in character it is to be said that it was no more tortious than in the last two cases named, in which the principle announced in the Burchiel case, 4 C. Cls. 549, was reiterated, namely, that where private property has been taken for public use and the Government has received the benefit, and the individual sustained a loss, there is an implied contract to compensate the owner.
If this case is to be treated as a taking by the Government in the sense that after it received the property by mistake, it took it by refusing to return it to the owner, the answer is that the agent who received the property and who held it acted with authority under instructions from the War Department. The Secretary of War under the national security and defense act had authority to take this property for public use. Where the agent or representative of the Government acts with authority there can be nothing tortious in the chax’acter of the acts because it was lawful. In the very conception of a tort the basis of it is an unlawful act. In the very essence of the idea of a sovereign, it can not itself commit an unlawful act. It is the source of all law; it. creates the law; its acts are law. It creates the courts, appoints the judges, and says what the law shall be.
As the Government can only act through its officers, when they act with authority their acts are the acts of the sovereign and must be lawful. If the officer acts beyond the scope of his authority, then the act is his individual act and not that of the sovereign. He commits the wrong, and not the sovereign. Thus, the sovereign can not commit a tort. *183 If a tort has actually been committed, it must necessarily result from the unauthorized act of the officer or representative of the sovereign. In each case, the officer or representative commits the tort, and not the sovereign. So when the law says that the Government shall not be liable in an action sounding in tort it simply refers to the unauthorized act of some officer or representative. It can and does mean nothing else. It has been said that where there has been a wrongful act of conversion the individual can not waive the tort and sue on an implied promise, as he could do if the wrongful act had been committed by an individual. This is true for the very plain reason that the wrongful act must have been an act without authority, and consequently not the act of the Government. There was, therefore, no tort to be waived so far as the Government is concerned. The thought intended to be conveyed was that the injured party could not waive the tort for which the officer was individually liable and sue the Government on an implied promise which could not exist, for the reason that there was no unlawful act so far as the Government was concerned. There was no tort to be waived as to the Government, so there could be nothing upon which to base an implication of a promise to pay. In the case of Gibbons v. United States, 8 Wall. 269, the officer making the threats had no authority to use force or make threats and was acting beyond his authority.
It is true that in this case at common law, as between individuals, the retention of another’s property, and the refusal to return it, or the appropriation of it to the holder’s use, sounded in tort, and the action for recovery would have been in form ex delicto, but this is equally true of the Burchiel case, 4 C. Cls. 549; the Mason case, 14 C. Cls. 59; the Peck, case, 14 C. Cls. 84; and the Salomon case, 7 C. Cls. 482. In these cases the Government received the goods under an invalid contract, or by the use of duress, and as between individuals at common law the action would have been in form ex delicto for the unlawful deprivation of the plaintiffs of their right of possession, but the property having been retained and used for public purposes these cases have held that an implication of an obligation to pay just *184 compensation will arise under the fifth amendment. As a matter of fact, in nearly every case, in these cases just named, the Lynah case, 188 U. S. 445, and the Cress case, 243 U. S. 316, the actions under the facts, as between individuals at common law, would have been ex deUcto.
This case is not controlled by the principle announced in Langford’s case, 101 U. S. 341, or that in the Tempel case, 248 U. S. 121. In the former case the Government claimed ownership of the property prior to the time of taking. In this case, if there was a taking, the ownership of the property prior thereto was admittedly in the plaintiffs. As pointed out, however, this was not a taking in the sense .of taking real property. This property was erroneously put in the possession of the Government while still the property of the plaintiffs. The Government had no right to retain it, but did retain it and refused to return it and used it for public purposes, and under the circumstances of the cases cited there arose an implication of a promise to pay under the fifth amendment.
This case is ruled by the case of United States v. Buffalo Pitts Co., post. There the Government took and used the plaintiff’s property under the belief that it had a right to do so by reason of its contract with the contractor whose work it had taken over, and on demand refused to deliver the property to the plaintiff and continued to use it. It had no legal right to retain the property or to refuse to return it to the plaintiff. The court held that the Government was liable on an implied contract, as it would be presumed in taking and using the property the implication arose that it intended to pay for its use.
In United States v. Buffalo Pitts Co., 234 U. S. 228, 235, the court said:
“ In the present case the Government had the right to contract for this work under statutory authority and to acquire property necessary to that end. Under the contract it might take possession of the construction company’s property, and, it may be conceded, finish the contract with such property, but it had no right to use the property of others without compensation. * * * The mortgagee had a distinct right in the property which had accrued to it before the property was entered upon, and *185 was authorized to take and hold the same as against the attempted transfer of the mortgagor. While the Government claimed the right to thus take and use the property, it nevertheless held it without denying the right of the owner to compensation. When it takes property under such circumstances for an authorized governmental use it impliedly promises to pay therefor.”
It will be seen that this last case is a case of the Government taking or receiving from a defaulting contractor property of a third person, applying it to public use under a mistaken contractural right, and retaining it and refusing to return it, which is just the case at bar. This case is distinguished by the court in the case of Ball Engineering Co. v. White & Co., 250 U. S. 46, from that case in that in the latter, while the property came into the possession of the Government under a mistaken right of contract, it toas not retained and used for public purposes, but was surrendered into the possession of a third party who made no claim to the ownership of the property, and it was specifically stated that the Government would not be liable therefor. The Government received no benefit, and the act of surrendering it into the possession of a third party was altogether an unauthorized act of the Government officer and entirely beyond the scope of his authority. But the real distinction was that the Government did not receive the benefit and that the property was not used for public purposes.