BERNARD FOLIO, Appellant, *v.* MITZI S. BRIGGS, Respondent.

No. 13270

January 20, 1983                    656 P.2d 842

*Nitz & Schofield* and *James H. Walton,* Las Vegas, for Appellant.

*Goodman, Oshins, Brown & Singer,* and *Richard A. Harris* and *Kirby R. Wells,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Summary judgment was entered in favor of respondent Mitzi S. Briggs (Briggs) and against appellant Bernard Folio (Folio) pursuant to the district court's perception of the meaning and effect of NRS 463.510(1).[1] Since we do not agree with that perception of the statute, we must reverse.

On or about February 15, 1977, Briggs entered into a stock purchase agreement with Anthony Torcasio. Under the terms of the agreement, Torcasio and his assigns were given the option to purchase 5 percent of the total issued capital stock of Hotel Conquistador, Inc.[2] The latter corporation was, on the date of the agreement, holder of a Nevada gaming license and the owner and operator of the Tropicana Hotel and Country Club. On July 21, 1977, the Nevada Gaming Commission approved the agreement between Briggs and Torcasio.

Torcasio assigned all of his interest in the agreement to Grandeotto, Inc., on July 13, 1978, for the sum of $10,000. Thereafter on November 15, 1979, Grandeotto, Inc. sought to exercise the stock purchase option by tendering $5,000 to Briggs. The tender was rejected.

On September 3, 1980, Grandeotto, Inc. assigned all of its rights in the stock purchase agreement to Folio. Thereafter, Folio filed a complaint against Briggs seeking specific performance of the agreement and damages. In response, Briggs filed a

---

[1]NRS 463.510(1) provides:

> The sale, assignment, pledge or other disposition of any security issued by a corporation which holds a state gaming license is ineffective unless approved in advance by the commission.

[2]Neither the agreement nor the subsequent assignments thereof were made part of the record on appeal. We are thus forced to accept the uncontroverted recital of facts and affidavits on appeal concerning the substance of these documents.

motion to dismiss claiming the assignment to Folio was void *ab initio* by reason of the absence of prior approval of the Nevada Gaming Commission as assertedly required by NRS 463.-510(1). By a parity of reasoning, Briggs also contended that the first assignment from Torcasio to Grandeotto, Inc. was invalid. The district court treated the motion to dismiss as a motion for summary judgment, adopted the position asserted by Briggs and accordingly entered summary judgment. For reasons specified hereafter, we have determined that summary judgment in favor of Briggs was based upon an erroneous interpretation of the effect of NRS 463.510(1) and cannot stand.

On appeal, Briggs assumed the anomalous position of acknowledging the validity of the original agreement between Briggs and Torcasio albeit without the advance approval of the Nevada Gaming Commission. It is apparent that the gaming commission also considered the agreement valid from its inception since it received the express approval of the commission over five months after the agreement was executed. It seems clear, therefore, that the Nevada Gaming Commission has, at least inferentially, interpreted NRS 463.510(1) as not requiring advance approval as a condition to the validity of an option to acquire stock in a corporation which holds a state gaming license. This is a sound position for several reasons. First, the clear language of the statute purports to operate only on a sale, assignment, pledge or other *disposition* of a security issued by such a corporation. An option to acquire an issued security does not constitute any form of disposition of the security itself. It does not create any ownership interest in a security but rather the right to acquire, upon condition satisfied, such an ownership interest. Ross v. Bank of Gold Hill, 20 Nev. 191, 19 P. 243 (1888). Second, since the statute is directed to those who hold or own securities, as opposed to those who would purchase, acquire or receive such securities as a pledgee or other form of secured creditor, it seems clear that the statute has the effect of requiring approval of the intended security disposition as a condition precedent to an effectual disposition. Third, such an interpretation facilitates orderly business transactions which include the sale of options which may, in fact, never be exercised.

Even if we were to fit an option agreement within the purview of NRS 463.510(1) it would not affect the validity of the assignments any more than it affected the validity of the underlying agreement between Briggs and Torcasio. The statutory

language makes any disposition of a gaming security "ineffective" without advance approval of the commission. The term "ineffective" is not, however, equivalent to the terms "void" or "invalid". We conclude, in the context of the subject statute, that the term "ineffective" means conditionally valid or, at most, voidable. *See* Pastimes Publishing Co. v. Advertising Displays, 286 N.E.2d 19 (Ill.App. 1972) (ineffective means voidable); Peck v. Ormsby, 8 N.Y.S. 372 (N.Y. 1889) (ineffective is not equivalent to void). Such an interpretation would mean that any attempted disposition of gaming securities would suffer from a legal impediment pending approval by the gaming commission.

In the context of the instant action, the distillate of the foregoing means that when Torcasio contracted with Briggs he obtained a contract right which was not exercisable without the approval of the gaming commission. Similarly, Grandeotto, Inc. and Folio each received contract rights by assignment which at the time were not exercisable prior to obtaining the commission's approval. This is entirely consistent with the action of the gaming commission in its approval of the Briggs-Torcasio agreement long after the date of its execution. If the commission had construed the statute to mean that such agreements were void unless previously approved by the commission, no subsequent approval by the commission of a void agreement could breathe into it the breath of life. And since an agency such as the gaming commission is impliedly clothed with the power to construe the statutes under which it operates, we are obliged to attach substantial weight to the agency's interpretation. *See* Clark Co. Sch. Dist. v. Local Gov't, 90 Nev. 442, 530 P.2d 114 (1974); Sierra Pac. Power v. Department of Taxation, 96 Nev. 295, 607 P.2d 1147 (1980).

Since our decision is dispositive of this appeal, we decline to consider other issues raised by the parties. However, it should be noted that the provisions of NRS 463.510(1) are no longer applicable to the instant case in that the assets of Hotel Conquistador, Inc., including the Tropicana Hotel, were sold to Hotel Ramada of Nevada on December 8, 1979, and Hotel Conquistador, Inc. has not held a gaming license since that time. Consequently, even if the assignment of the option to Folio was at one time subject to a legal impediment imposed by the subject statute, it is not now. Therefore, since the failure to seek prior approval of the commission did not affect the validity of the assignment, now that the statute is no longer applicable, the question of compliance with NRS 463.510(1) is moot.

Accordingly, we reverse the summary judgment and remand the case to the district court for further proceedings in accordance with this opinion.