HARRIS ASSOCIATES, A NEVADA CORPORATION, APPELLANT, v. CLARK COUNTY SCHOOL DISTRICT, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, RESPONDENT.

No. 38140

December 30, 2003                                                81 P.3d 532

---

[1]*State ex rel. Tax Comm'n v. Saveway,* 99 Nev. 626, 630, 668 P.2d 291, 294 (1983).

[1]*See* NAC 362.160.

*Morse & Mowbray* and *Christopher H. Byrd,* Las Vegas, for Appellant.

*Lefebvre & Associates, Chtd.,* and *Brad R. Kohler II, Alan J. Lefebvre,* and *Richard A. Prato,* Las Vegas, for Respondent.

Before the Court EN BANC.

# OPINION

*Per Curiam:*

Clark County School District (CCSD) contracted with appellant Harris Associates for construction work. When disputes arose between the parties, Harris requested that those disputes be submitted to arbitration. The CCSD rejected Harris's request, and Harris filed an action to compel arbitration, arguing that NRS 338.150(1)[1] mandates that the parties arbitrate their disputes. The district court denied Harris's motion to compel arbitration, and Harris appeals. We reverse the district court's order.

## FACTS

In 1998, the CCSD, a political subdivision of the State of Nevada, contracted with Harris for the Basic High School Addition Project. Several disputes arose between the CCSD and Harris. Harris submitted claims for additional compensation to the CCSD, but the CCSD rejected the claims. Provision 4.5.1 of the parties' contract provided:

> Any controversy . . . arising out of or related to the Contract, or the breach thereof shall be settled by arbitration, *unless the Owner, at it's [sic] sole option, within twenty (20) days of receiving a request for arbitration rejects arbitration by notifying the Contractor by certified mail, return receipt requested.*

Pursuant to this provision, Harris sent the CCSD a letter requesting that their disputes be arbitrated. The CCSD rejected arbitration.

Harris sought declaratory relief in the Clark County District Court to determine whether the CCSD was obligated to arbitrate the claims in accordance with section 4.5.1 of the parties' contract and NRS 338.150(1). After Harris's motion to compel arbitration was denied by the district court, Harris appealed.

## DISCUSSION

On appeal, Harris maintains that NRS 338.150(1) mandates arbitration as the means to resolve disputes that arise in public works construction projects. The CCSD responds that NRS 338.150(1) merely requires that public works contracts include a clause that allows arbitration as a means of dispute resolution but does not re-

---

[1]NRS 338.150(1) requires the inclusion of a clause permitting arbitration of disputes arising between a state agency or subdivision and a contractor in the "construction, alteration or repair of public works." The Legislature amended NRS 338.150(1) during the 2003 legislative session. 2003 Nev. Stat., ch. 401, § 30, at 2438. The amendments took effect on July 1, 2003. *Id.* § 47, at 2450. The 2003 amendments did not alter the substantive effect of the provisions at issue in this case.

quire arbitration. The CCSD further contends that if NRS 338.150(1) does require arbitration, then the statute violates its right to a jury trial under Article 1, Section 3 of the Nevada Constitution and NRCP 38(a). Harris counters that the Nevada Legislature waived the CCSD's right to a trial by jury.

*Interpretation of NRS 338.150(1)*

At the time that the parties entered their contract, NRS 338.150(1) provided:

> Any agency of this state and any political subdivision, municipal corporation or district and any public officer or person charged with the drafting of specifications for the construction, alteration or repair of public works, shall include in the specifications a clause permitting arbitration of a dispute arising between the agency and a contractor if the dispute cannot otherwise be settled.

The CCSD argues that NRS 338.150(1) merely requires that it include a clause in its public works contracts that permits it to arbitrate disputes at its sole discretion. Harris argues that the statute requires the CCSD to submit to binding arbitration. Because the parties posit two reasonable interpretations of the statute, we conclude that NRS 338.150(1) is ambiguous.[2] Therefore, we must attempt to discern the legislative intent behind the statute.

This court reviews issues of statutory construction de novo.[3] When "the words of the statute have a definite and ordinary meaning, this court will not look beyond the plain language of the

[2]*Banegas v. SIIS,* 117 Nev. 222, 225, 19 P.3d 245, 247 (2001) ("[I]f a statute is susceptible to more than one natural or honest interpretation, it is ambiguous."); *McKay v. Bd. of Supervisors,* 102 Nev. 644, 649, 730 P.2d 438, 442 (1986) ("Where a statute is capable of being understood in two or more senses by reasonably informed persons, the statute is ambiguous.").

[3]*State, Bus. & Indus. v. Granite Constr.,* 118 Nev. 83, 86, 40 P.3d 423, 425 (2002). The CCSD argues that this court should attach weight to its statutory interpretation because the CCSD is impliedly clothed with the power to construe it. The CCSD cites several cases for this proposition. However, these cases deal with agencies such as the Gaming Control Board, the Department of Taxation, and the Employee-Management Relations Board and their interpretation of statutes under which they operate. *Folio v. Briggs,* 99 Nev. 30, 33, 656 P.2d 842, 844 (1983); *Sierra Pac. Power v. Department Taxation,* 96 Nev. 295, 297, 607 P.2d 1147, 1148 (1980); *Clark Co. Sch. Dist. v. Local Gov't,* 90 Nev. 442, 446, 530 P.2d 114, 117 (1974). Here, the CCSD is merely one public agency to which NRS 338.150(1) applies and, thus, is not impliedly clothed with the power to construe the statute. Further, even if the CCSD had authority to construe NRS 338.150(1), this court has held that "questions of statutory construction are purely legal issues to be 'reviewed without any deference whatsoever to the conclusions of the agency.'" *State, Dep't Mtr. Veh. v. Jones-West Ford,* 114 Nev. 766, 773, 962 P.2d 624, 629 (1998) (quoting *Manke Truck Lines v. Public Service Comm'n,* 109 Nev. 1034, 1036-37, 862 P.2d 1201, 1203 (1993)).

statute, unless it is clear that this meaning was not intended."[4] However, if a statute "is ambiguous, the plain meaning rule of statutory construction" is inapplicable, and the drafter's intent "becomes the controlling factor in statutory construction."[5] An ambiguous statutory provision should also be interpreted in accordance "with what reason and public policy would indicate the legislature intended."[6] Additionally, we "construe statutes to give meaning to all of their parts and language, and this court will read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation."[7] Further, no part of a statute should be rendered meaningless[8] and its language "should not be read to produce absurd or unreasonable results."[9]

The legislative history of NRS 338.150 indicates that the Legislature intended it to mandate arbitration. In 1971, the Legislature amended NRS 338.150 in several ways. The Legislature changed the language of NRS 338.150(1) from "*may* include in the specifications a clause permitting arbitration" to "*shall* include in the specifications a clause permitting arbitration."[10] The Legislature also added NRS 338.150(3), exempting the Department of Transportation from the arbitration-clause requirement.[11] Changing "may" to "shall" and simultaneously exempting the Department of Transportation from the requirements of NRS 338.150(1) are strong indications that the Legislature intended arbitration to be mandatory. If the Legislature had intended that the contract provision would merely give other state subdivisions the option to arbitrate at their discretion, it would have had no reason to exempt any department, since each department would still be free to arbitrate or not.

The wording of NRS 338.150(2) and NRS 338.150(1) also supports the view that the Legislature intended to require arbitration.

---

[4]*State v. Quinn,* 117 Nev. 709, 713, 30 P.3d 1117, 1120 (2001); *see also Glover v. Concerned Citizens for Fuji Park,* 118 Nev. 488, 492, 50 P.3d 546, 548 (2002) (stating that "[i]t is well established that when the language of a statute is unambiguous, a court should give that language its ordinary meaning"), *overruled in part by Garvin v. Dist. Ct.,* 118 Nev. 749, 59 P.3d 1180 (2002).

[5]*Harvey v. Dist. Ct.,* 117 Nev. 754, 770, 32 P.3d 1263, 1274 (2001); *see also McKay,* 102 Nev. at 649, 730 P.2d at 442.

[6]*McKay,* 102 Nev. at 649, 730 P.2d at 442 (internal quotation marks and citations omitted).

[7]*Coast Hotels v. State, Labor Comm'n,* 117 Nev. 835, 841, 34 P.3d 546, 550 (2001).

[8]*Banegas,* 117 Nev. at 228, 19 P.3d at 249.

[9]*Glover,* 118 Nev. at 492, 50 P.3d at 548.

[10]1971 Nev. Stat., ch. 345, § 1, at 621 (emphasis added).

[11]*Id.*; *see also* Hearing on S.B. 471 Before the Senate Judiciary Comm., 56th Leg., at 2 (Nev., March 24, 1971).

NRS 338.150(2) provides that "[*a*]*ny dispute requiring arbitration* must be handled in accordance with the industry's rules for arbitration as administered by the American Arbitration Association or the Nevada Arbitration Association." (Emphasis added.) The Legislature's use of the phrase *any dispute requiring arbitration* suggests that the Legislature intended NRS 338.150(1) to mandate arbitration as opposed to merely requiring the inclusion of a clause giving the public entity responsible for the public works project discretion to arbitrate.

The testimony of those appearing before the Legislature in support of the amendment of NRS 338.150 in 1971 also indicates that the Legislature intended arbitration to be mandatory under NRS 338.150(1).[12] Mr. Oakes, Manager, Associated General Contractors, speaking to the Assembly Committee on Judiciary, discussed how arbitration would save the state money.[13] Mr. Oakes further stated:

> [T]he State Planning Board has failed to use the standard arbitration clause in its contracts and specifications and this makes it difficult for building contractors. If the specifications aren't clear and there is no arbitration clause, court action has to decide the disagreement, which takes time. The insertion of the standard arbitration clause in state building contracts would save the state money and the association would like to see the bill passed.[14]

The minutes also demonstrate that other persons testifying believed that arbitration would be a faster and more efficient way to resolve disputes concerning public works projects.[15] Mr. Oakes testified that he believed that arbitration would keep some contractors from filing for bankruptcy protection.[16] Other contractors testified that they believed that arbitration would be a much better means of resolving their disputes with the state than litigation.[17] One of the contractors went as far as to say, "[T]here wasn't a contractor in the state that has not gotten burned by this section as it is now."[18]

[12]*See Lowe Enterprises v. Dist. Ct.,* 118 Nev. 92, 103-04, 40 P.3d 405, 412 (2002) (considering comments solicited by the Legislature to determine the Legislature's intent in amending a statute).

[13]Hearing on S.B. 471 Before the Assembly Comm. on Judiciary, 56th Leg., at 1 (Nev., April 5, 1971).

[14]*Id.*

[15]Hearing on S.B. 471 Before the Senate Judiciary Comm., 56th Leg., at 4 (Nev., March 23, 1971) (contractor testimony).

[16]Hearing on S.B. 471 Before the Assembly Comm. on Judiciary, 56th Leg., at 1 (Nev., April 5, 1971).

[17]Hearing of S.B. 471 Before the Senate Judiciary Comm., 56th Leg., at 4 (Nev., March 23, 1971) (contractor testimony).

[18]*Id.* (testimony of Mr. Tom Donnels, owner of Walker-Boudwin Construction Company).

Since the Legislature passed the proposed amendments, the Legislature must have accepted the proponents' comments and concluded that arbitration would be a more efficient means of resolving public works disputes. The comments further indicate that the Legislature intended arbitration to be mandatory under NRS 338.150(1). It is reasonable to conclude that the Legislature would not enact a statute that makes dispute resolution easier and more efficient and then, simultaneously, grant the disputants the authority to circumvent the process and undermine the statute's purpose. Therefore, we conclude that the Legislature intended NRS 338.150(1) to mandate binding arbitration.

*Right to jury trial*

The CCSD contends that if NRS 338.150 requires binding arbitration, the statute unconstitutionally denies the parties their right to trial by jury. Article 1, Section 3 of the Nevada Constitution provides: "The right of trial by Jury shall be secured to all and remain inviolate forever; but a Jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law . . . ." NRCP 38(a) states: "The right of trial by jury as declared by the Constitution of the State or as given by a statute of the State shall be preserved to the parties inviolate."

The CCSD contends that *Williams v. Williams*[19] supports its argument that NRS 338.150(1) violates its right to a jury trial. In *Williams,* this court held that former NRS 38.215 was "an unconstitutional infringement on the right to trial by jury."[20] NRS 38.215 imposed compulsory arbitration on private parties wishing to pursue certain types of automobile claims and limited their right to obtain a jury trial after arbitration. NRS 338.150(1) is distinguishable from former NRS 38.215 in that NRS 338.150(1) does not require two private parties to arbitrate their claims. In this case, the private party is waiving a jury trial, and the public agency is the one seeking to enforce the right to a jury trial. The Legislature, on behalf of the CCSD, has waived its right to a jury trial. By enacting the statute, the Legislature consented on behalf of the subdivisions of the state to waive the right to a jury trial in certain disputes.[21]

A similar issue was presented to the Supreme Court of North Dakota in *Hjelle v. Sornsin Construction Company.*[22] In *Hjelle,* the

---

[19]110 Nev. 830, 877 P.2d 1081 (1994).

[20]*Id.* at 833-34, 877 P.2d at 1083.

[21]The issue of whether the construction company has a right to a jury trial or whether it is waived by entering into the public works contract is not before this court and is not being determined.

[22]173 N.W.2d 431 (N.D. 1969).

court considered whether a statute that mandated arbitration of ''controversies arising out of any contract for the construction or repair of highways entered into by the [highway] commissioner''[23] violated the highway commissioner's and private parties' constitutional right to a jury trial.[24]

The court determined that disputes between private parties should be distinguished from suits between private parties and the state.[25] The court reasoned that by enacting the mandatory arbitration statute, ''the Legislature consented on behalf of the State, and, accordingly, on behalf of its agent, the Highway Commissioner, to such a mode of settlement.''[26] Furthermore, the private party was not raising its right to a jury trial; it was the state seeking the jury trial.[27] The court stated that the highway commissioner could not assert the constitutional rights of his opponents.[28]

We agree with the *Hjelle* court's reasoning and conclusion. The CCSD, a political subdivision of the state, pursuant to NRS 386.010(2), is attacking the mandatory arbitration statute. By enacting NRS 338.150(1), the Nevada Legislature waived the CCSD's right to a trial by jury. Because the Legislature waived the CCSD's right to trial by jury, NRS 338.150(1) does not violate its right to a trial by jury under either the Nevada Constitution or NRCP 38(a).

Accordingly, we reverse the order of the district court and remand this case to the district court for proceedings consistent with this opinion.

---

[23]N.D. Cent. Code § 24-02-26 (1970) (amended 1995).

[24]173 N.W.2d at 434.

[25]*Id.* at 436-37.

[26]*Id.* at 436.

[27]*Id.* at 437.

[28]*Id.* at 435.