ROBERT W. EWING, JACK R. EWING, AND REX EWING, JR., DBA EWING BROS. AUTO BODY, EWING BROTHERS AUTO BODY, EWING BROS. AUTO BODY SHOP, EWING BROTHERS AUTO BODY SHOP, EWING BROS. AUTOMOTIVE REPAIR, EWING BROS. TOWING SERVICE, AND EWING BROTHERS TOWING SERVICE, APPELLANTS AND CROSS–RESPONDENTS, v. ROBERT FAHEY AND PATRICIA FAHEY, HUSBAND AND WIFE, AND CLARK COUNTY TEACHERS FEDERAL CREDIT UNION, RESPONDENTS AND CROSS–APPELLANTS.

No. 6051

July 15, 1970                                    472 P.2d 347

*Foley Brothers* and *Thomas D. Beatty,* of Las Vegas, for Appellants.

*David Canter,* of Las Vegas, for Respondents.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal from a judgment in favor of respondents (plaintiffs below) in which they brought an action for conversion of their automobile by appellants (defendants below). Respondents cross-appeal from a judgment denying them attorney fees and costs in the trial court. We hold error was committed, reverse the judgment and dismiss the action.

On July 24, 1965, respondents, the Faheys, purchased a 1965 Ford Mustang automobile for $2,626.05 financed by a loan from respondent Clark County Teachers Federal Credit Union of $2,792.79 which was secured by a chattel mortgage.

On August 9, 1965, the Faheys' auto was damaged in an accident and towed to appellant Ewing Brothers garage for repair, the cost of which was covered by insurance. While the accident damage was being repaired, the Faheys contracted with Ewing Brothers to paint the left side of the auto (not caused by the accident) for the sum of $26.63.

Upon completion of the repairs and left side painting, the auto was voluntarily released to the Faheys without payment for the painting. The Faheys thereafter refused to pay for painting the left side because they claimed it was defective and the paint had begun to flake and peel off.

On March 5, 1966, Ewings, pursuant to NRS 108.270 and 108.280, had the auto towed back to their garage to hold under their garagemen's lien. The Faheys, after unsuccessfully demanding return of the auto, brought an action for conversion. The Credit Union intervened as a lien holder. Ewing Brothers sent Notice of Sale of the auto to the Faheys and the Credit Union on January 9, 1968. On February 18, 1968, the auto was sold by Ewings for $875 in satisfaction of their lien.

The matter first came on for trial in April, 1968, before a district judge who could not and did not complete it. It came on later for trial before another district judge, who ruled that the holder of a garagemen's lien may not maintain the lien without some action on his part to satisfy it within a reasonable time. He also ruled two months from time of acquisition of the lien was a reasonable time within which to proceed with

sale of the property in satisfaction of the lien and that failure to do so terminated the lien's validity. He adjudged that Ewing Brothers had improperly converted the Faheys' auto and held that the Faheys and the Credit Union were entitled to recover $2,017, the value of the Mustang auto as of May 6, 1966, but reduced that sum by $221.63, the cost of the paint job and enforcement of the garagemens' lien, and awarded respondents a net judgment of $1,795.37. He denied respondents' request for attorney fees and costs. It is from those judgments the appeal and cross-appeal were taken.

While several errors were urged on the appeal and cross-appeal, our view is that a single issue is presented for our determination; that issue is:

I.  Whether a garagemen's lien under NRS 108.270 to 108.360 must be satisfied by sale within a reasonable time or be lost, subjecting the lien holder to damages for decrease in value thereafter?

1.  The statute under which Ewings claimed lien rights against the Faheys' auto is NRS 108.270, which provides: "[A]ny person or persons, company or corporation engaged in the business of . . . keeping a garage . . . for the storage, maintenance, keeping or repair of motor vehicles . . . and who in connection therewith stores, maintains, keeps or repairs any motor vehicle . . . or furnishes accessories, facilities, services or supplies therefor, at the request or with the consent of the owner or its or his representatives, has a lien upon such motor vehicle . . . or any part or parts thereof for the sum due for such storing, maintaining, keeping or repairing of such motor vehicle . . . or for labor furnished thereon, or for furnishing accessories, facilities, services or supplies therefor, and for all costs incurred in enforcing such lien, and *may, without process of law, detain such motor vehicle . . . at any time it is lawfully in his possession until such sum is paid.*" (Emphasis added.)

Provision is made for recovering a vehicle once possession has been relinquished without process of law and without losing the lien. NRS 108.280.

The legislative history of that statute is instructive. In 1917, the first garagemen's lien law was enacted in this state. Contained therein was a proviso that all such liens "shall expire by limitation within 20 days, unless suit is brought by the holder of said liens or liens [sic] to enforce same." Ch. 213, § 5, [1917] Stats. of Nev. 403. That section was amended in 1925 by extending the time limitation to 45 days. Ch. 174, [1925] Stats. of Nev. 279. In 1943, the entire 1917 act as

amended was repealed and the basic format of the present statute was enacted. Ch. 95, [1943] Stats. of Nev. 121.

It therefore appears the legislature intended from the manner in which it changed the garagemen's lien statute not to require, but only permit, sale by the lien holder ˉof the chattel held under the lien and that the lien would remain in effect until the indebtedness was paid or the property sold. Lending support to such interpretation is NRS 108.310, which provides that "the lien created by NRS 108.270 to 108.360, . . . *may* be satisfied . . ." by giving notice which shall contain, "[3.] (d) statement that unless the claim is paid within the time specified the motor vehicle . . . will be advertised for sale, and sold by auction at a specified time and place." Again in its draftsmanship and adoption of the garagemen's lien statute, the legislature used the word "may." "May" is of course generally permissive. See Fourchier v. McNeil Constr. Co., 68 Nev. 109, 227 P.2d 429 (1951); SCR 2(9); DCR 2(6); 26A Words and Phrases 404 (May—In Statutes as Permissive or Mandatory). More fully stated, the rule is best expressed in this manner: "Generally in construing statutes, 'may' is construed as permissive and 'shall' is construed as mandatory unless a different construction is demanded by the statute in order to carry out the clear intent of the legislature." City of Wauwatosa v. County of Milwaukee, 125 N.W.2d 386, 389 (Wis. 1963). There is nothing to indicate the legislature intended mandatory rather than permissive interpretation of its use of the word "may."

Still further support is found for such construction of the garagemen's lien statute. There existed at the common law a lien for the benefit of artisans and mechanics who furnished labor and materials upon the personal property of another, and this has been held to apply to garagemen and mechanics who furnished labor and materials for automobiles. Hughes v. Aetna Ins. Co., 261 S.W.2d 942 (Mo. 1953); Hiltz v. Gould, 105 A.2d 48 (N.H. 1954); Honey v. Pacific Auto. Indem. Exch., 212 P. 199 (Cal. 1923); Annot., 62 A.L.R. 1485, 1486 (1929). The common law lien only gave the right to retain possession of the property until the debt was paid. Hughes v. Aetna Ins. Co., supra.

In 3 J. Sutherland, Statutes and Statutory Construction § 5305 (3d ed. F. Horack 1943), it is stated: "There is a presumption that a statute is consistent with the common law, and so a statute creating a new remedy or method of enforcing a right which existed before is regarded as cumulative rather than exclusive of the previous remedies." The

legislature here has codified the common law remedy in NRS 108.270 (quoted above), and provided an additional remedy in NRS 108.310 by permitting the garageman to sell the property if it is not redeemed by payment of the debt. The language of NRS 108.310 does not by its terms alter the common law remedy; the use of the permissive word "may" suggests that it is an additional remedy.

An examination of NRS ch. 108 covering the whole gamut of statutory liens, fortifies further our construction of NRS 108.270 as not requiring, but only permitting sale of the liened vehicle. It appears the legislature has consistently followed the plan of requiring enforcement of lien rights within a specific or reasonable time only where the property cannot readily be taken into possession by the lien holder. See NRS 108.233 (mechanics' liens) and NRS 108.240(2) (foundrymen's liens). In every other statutory lien under that chapter, the lien *may* be (not must be) satisfied by sale of the property.

2. This construction of NRS 108.270 does not leave the debtor subject to the caprice and whim of the lien holder, if he believes the charges are unjust or the lien invalid. NRS 108.350 states that nothing in the lien statutes precludes the owner of property covered by the lien from contesting the validity of the lien and all of his legal rights and remedies are reserved by him for that purpose. To cite just one remedy, see NRS 31.840, the claim and delivery statute, which is available to one desiring to bring an action to recover personal property. Thus, the debtor, if he so desires, can recover possession of his property while the parties' respective rights are awaiting determination.

3. Other errors were urged, both in the appeal and the cross-appeal. However, they do not require our consideration or ruling, in light of the action taken above.

Judgment for respondents is reversed with instructions to the lower court to dismiss the action.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.