STATE EX REL. LYNCH, District Attorney of Dane County, Petitioner, v. DANCEY and others, Respondents.

*No. 75–440. Submitted on briefs January 7, 1976.—*
*Decided February 3, 1976.*
(Also reported in 238 N. W. 2d 81.)

For the petitioner there was a brief by *Humphrey J. Lynch,* district attorney of Dane County, Madison.

For the respondents there was a brief by *Thomas G. Ragatz,* of Madison, and a brief of attorney general as amicus curiae by *Bronson C. La Follette,* attorney general, and *John J. Glinski,* assistant attorney general.

CONNOR T. HANSEN, J.   The facts are stipulated as follows:

"1.   That the Wisconsin Judicial Commission was created by the Wisconsin Supreme Court as an agency of the judicial branch of our state government, effective January 1, 1972; and that the Court promulgated the Judicial Commission Rules of Procedure effective April 1, 1973.

"2.   That on April 18, 1975 at a meeting of the Commission consideration was given to the complaints in a disciplinary matter involving Judge RICHARD G. HARVEY, JR. and the results of investigation and other disciplinary data as to the charges against Judge HARVEY. At that meeting a vote was taken as to whether to issue, serve

and file a formal complaint against Judge HARVEY. Seven of the nine Commission members were present, and the vote was four in favor of such action and three against.

"3. That overlooking the requirement in Rule 2(5) for concurrence by five members of the Commission in order to take valid action, the Commission caused the issuance, service and filing of a formal complaint against Judge HARVEY.

"4. That on July 25, 1975, a public meeting of the Commission was scheduled and public notice thereof was given. Among items on the agenda for consideration were various motions and demurrers interposed by Judge HARVEY in response to the invalid formal complaint.

"5. That on the morning of the meeting the Commission discovered its violation of Rule 2(5), and the invalidity of its previously issued complaint, and advised Judge HARVEY's counsel that the public meeting would be delayed until approximately 11:00 a.m.

"6. That just prior to convening the public meeting the Commission held an executive session, and that such executive session was for the sole purpose of again considering the complaints and investigations in the disciplinary matter involving Judge HARVEY on which a formal complaint had been invalidly issued.

"7. That no notice was given as to the executive session, and that the only business conducted at such session was the consideration of the results of investigation and other disciplinary data resulting from the investigation of the charges against Judge HARVEY for the particular benefit of those Commission members not in attendance when the prior action was taken, and consideration of whether to cause the issuance of a valid complaint.

"8. That eight members of the Commission were present at the executive session, and after such consideration a vote was taken and there were six votes in favor and two votes against issuance of a complaint.

"9. That after such executive session the Commission conducted the scheduled public meeting.

"10. That thereafter a formal complaint was issued, served and filed against Judge HARVEY."

The stipulation was subsequently modified to reflect that the meeting referred to in paragraph two took place on March 21, 1975, instead of April 18, 1975.

We consider that this case presents the following issues:

1. Is sec. 66.77, Stats., applicable to the Wisconsin Judicial Commission?

2. Did the closed meeting of the commission, held on the morning of July 25, 1975, violate sec. 66.77, Stats.?

However, before considering the issues presented, we first observe that we are fully in accord with the principles set forth in sec. 66.77 (1), Stats.:

"(1) In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental affairs and the transaction of governmental business. . . ."

Is sec. 66.77, Stats., applicable to the Wisconsin Judicial Commission? We are of the opinion that it is not.

In 1967, this court promulgated a *Code of Judicial Ethics* (1967), 36 Wis. 2d 252, 153 N. W. 2d 873. At the time of the promulgation of this code it was determined at page 254 that:

"We hold this court has an inherent and an implied power as the supreme court, in the interest of the administration of justice, to formulate and establish the Code of Judicial Ethics accompanying this opinion. It governs judicial acts of a judge in his official capacity and certain personal conduct which interferes or appears to interfere with the proper performance of his judicial conduct. This power, inherent in the supremacy of the court and implied from its expressed constitutional grants of supervisory power, embraces all members of

the judiciary including members of this court not only because they are lawyers but also because they are judicial officers in a court system constituting the judicial branch of the state government with a solemn duty to perform their judicial duties well."

Following the promulgation of the Code of Judicial Ethics, in 1972, this court adopted rules for the implementation of the *Code of Judicial Ethics* (1972), 52 Wis. 2d vii. These provided in part, at page vii:

"(A) . . .
"1. A Judicial Commission is created as an agency of the judicial branch of our state government."

In the further recognition of not only its responsibility to, but also its interest in, the administration of justice this court formulated and adopted *Judicial Comm. Rules of Procedure* (1973), 57 Wis. 2d vii. These rules are extensive and detailed. They follow the mandate of this court contained in Rule 14, 52 Wis. 2d vii, x (1972), of the order of this court creating the Judicial Commission to implement the Code of Judicial Ethics promulgated in 1967.

Rule 8, *Code of Judicial Ethics* (1972), *supra,* pp. viii, ix, vests in the commission the following powers:

"8. The commission shall have power to receive complaints of misconduct or disabilities of judges, make investigations thereof, hold hearings thereon, subpoena witnesses and take action relating thereto. Such action shall be on written findings of fact and written decision. In the case of no merit, the decision shall so state. The commission shall have the power to reprimand or censure a judge but shall make recommendations to the supreme court with respect to suspension, removal, or retirement of judges. All action respecting reprimands and censures made by the commission may be reviewed by the supreme court on its motion or upon petition of the interested judge."

As noted above, Rule 8, *Code of Judicial Ethics* (1972), *supra,* limits the power of the commission to action on

complaints of judicial misconduct. Such activity does not relate to the promulgation of rules of pleading, practice and procedure in judicial proceedings under sec. 251.18, Stats., as urged by the petitioner.

The source of the commission's power is found in the Rules through which it was established. *Code of Judicial Ethics* (1972), *supra.* These Rules, in turn, were created by this court in connection with its promulgation of the code itself. *Code of Judicial Ethics* (1967), *supra.* The purpose of the commission is to aid this court in implementation of the code. Thus, since this court had the inherent power to adopt the Code of Judicial Ethics, *Code of Judicial Ethics* (1967), *supra,* page 254, the implementation of the code by the creation of the Judicial Commission as an agency of the judicial branch of government, and the subsequent establishment of Rules of Procedure for the commission are both necessary and proper adjuncts to the initial authority to adopt the code.

Art. VII, sec. 3, Wisconsin Constitution, expressly vests superintending control of the judiciary in this court:

". . . The supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state; but in no case removed to the supreme court shall a trial by jury be allowed. The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other original and remedial writs, and to hear and determine the same."

This court has recently had occasion to address the scope and nature of its supervisory control over the judiciary of this state. *In re Hon. Charles E. Kading* (1975), 70 Wis. 2d 508, 235 N. W. 2d 409, 238 N. W. 2d 63. In that case, the inherent power of this court as the supreme court of the state, as well as the extent of its supervisory control, were discussed.

Following a review of prior judicial statements with regard to inherent judicial power, it was stated therein that:

"The function of the judiciary is the administration of justice, and this court, as the supreme court within a statewide system of courts, has an inherent power to adopt those statewide measures which are absolutely essential to the due administration of justice in the state." *In re Hon. Charles E. Kading, supra,* page 5.

Thus, the court concluded that it had inherent authority to promulgate the code in furtherance of the due administration of justice.

In *Kading, supra,* it was further stated that such power is reasonably implied from the constitutional grant of supervisory control contained in Art. VII, sec. 3, Wisconsin Constitution, *supra.*

". . . This power of superintending control is 'unlimited in extent . . . undefined in character . . . [and] unsupplied with means and instrumentalities.' That this is 'a clear, unequivocal grant of power' has been recognized from the earliest days of Wisconsin law. Justice ROUJET MARSHALL, after a painstaking survey of this power, speaking for this court, concluded in 1908 that it is 'not limited other than by the necessities of justice' and that it necessarily includes 'all . . . means applicable thereto and all power necessary to make such . . . means fully adaptable for the purpose.' The superintending power is as broad and as flexible as necessary to insure the due administration of justice in the courts of this state." *In re Hon. Charles E. Kading, supra,* page 7.

The commission and its rules of procedure stem directly from the promulgation of the code. The rules of the commission derive from the unequivocal grant of power and superintending control as they are described in the foregoing analysis.

The question left for determination, then, is whether the authority is exclusive. The decision in *In re Cannon*

(1932), 206 Wis. 374, 383, 240 N. W. 441, stated as follows:

"The judicial department of government is responsible for the plane upon which the administration of justice is maintained. Its responsibility in this respect is exclusive. . . ."

That case involved a legislative act reinstating a disbarred attorney. This court determined the act to be unconstitutional, in view of the exclusive nature of this court's responsibility for maintaining standards for the administration of justice in the courts. *In re Hon. Charles E. Kading, supra,* page 6, made it clear that this responsibility and power to superintend the due administration of justice extends to the maintenance of standards for the judiciary.

Thus, in matters of ethical supervision and maintenance of standards, the power of this court is exclusive. The fact that the rules of the commission were promulgated after the enactment of the open meeting law, sec. 66.77, Stats., is not controlling. Moreover, the implicit recognition of the legislature that the power is exclusive has been noted by this court. *In re Hon. Charles E. Kading, supra,* page 9:

"Judge KADING also argues that the adoption of a code of ethics for judges is a matter for the legislature alone to enact. In addition to our determination here that (1) this court has the inherent authority to adopt such a code as the supreme court performing its duties under our Wisconsin system of government, and (2) this court has the authority to adopt the code under its constitutional authority of superintending control over inferior courts, it must be noted that the legislature itself in recent years has specifically chosen not to adopt a code of ethics for judges. Thus in the 1973 legislative session, in enacting as part of the 1973 budget law (ch. 90) a code of ethics for state officials, the legislature specifically exempted the judiciary."

The rules of the commission include directives relating to open meetings. Rules 2 and 3, *Judicial Comm. Rules of Procedure, supra,* pp. viii, ix and x, specifically address these procedures. These rules essentially provide that following investigation and a determination by the commission of probable cause for the filing of a formal charge or hearing all proceedings from then on shall be public. We, therefore, conclude that the adoption of the *Judicial Comm. Rules of Procedure, supra,* pre-empted any attempt to apply the open meeting law, sec. 66.77, Stats., to the proceedings of the Judicial Commission. This determination does no violence to the public policy expressed by the legislative enactment of the open meeting law, because the rules of the commission relating to public hearings are at least as expansive as those contained in sec. 66.77.

Assuming *arguendo,* that sec. 66.77, Stats., was intended to apply to proceedings such as those of the Judicial Commission, there is no violation of that law.

The stipulation of facts, *supra,* acknowledges the original complaint against Judge HARVEY was invalid. Before public proceedings were commenced it was necessary that a formal charge, or valid complaint, be issued. Rule 2(4), *Judicial Comm. Rules of Procedure, supra.* The purpose of the closed session is also stipulated:

"6. That just prior to convening the public meeting the Commission held an executive session, and that such executive session was for the sole purpose of again considering the complaints and investigations in the disciplinary matter involving Judge HARVEY on which a formal complaint had been invalidly issued.

"7. That no notice was given as to the executive session, and that the only business conducted at such session was the consideration of the results of investigation and other disciplinary data resulting from the investigation of the charges against Judge HARVEY for the particular benefit of those Commission members not in attendance when the prior action was taken, and consideration of whether to cause the issuance of a valid complaint."

Certain exceptions to the open meeting requirement are contained in sec. 66.77 (4), Stats. Those pertinent to this matter read:

"(4) A governmental body may convene in closed session for purposes of:

" . . .

"(b) Considering employment, dismissal, promotion, demotion, compensation, licensing or discipline of any public employe or person licensed by a state board or commission or the investigation of charges against such person, unless an open meeting is requested by the employe or person charged, investigated or otherwise under discussion;

" . . .

"(e) Financial, medical, social or personal histories and disciplinary data which may unduly damage reputations;"

The facts show that the challenged meeting fell within these exceptions. The result of the meeting was a decision, by vote of 6–2 to issue a complaint against Judge HARVEY. Thus, the matters which are to be exempted from sec. 66.77, Stats., were the very matters considered by the commission. There would be no violation of sec. 66.77 in the instant circumstances.

Petitioner contends that, even if the meeting itself did not violate the statute, nevertheless, the procedures followed violated sec. 66.77 (5), Stats. That section gives the following directive:

"(5) No motion to hold a closed session or to adjourn an open session into a closed session shall be adopted unless the chief presiding officer announces to those present at the meeting at which such motion is made the general nature of the business to be considered at such closed session, and no other business shall be taken up at such closed session. . . ."

Petitioner's argument in this respect is unsubstantiated. The public meeting called for the morning of July 25, 1975, had not commenced at the time the closed session

was held. Thus, there was no need to announce to the meeting the nature of the business to be conducted since no meeting had been convened. Moreover, for the same reason, this was not a situation where an open session was adjourned into a closed session. Therefore, no violation of sec. 66.77 (5), Stats., would have occurred.

The facts show that, even if the open meetings statutes were applicable to proceedings of the Judicial Commission, no violation of that statute occurred.

We have fully considered the other issues raised by the respective parties in these proceedings. However, because of our disposition of the case, we deem it unnecessary to further consider them in this opinion.

*By the Court.*—It is declared and adjudged that sec. 66.77, Stats., is not applicable to proceedings before the Wisconsin Judicial Commission.