572 P.2d 521 (1977)
Aubrey GOLDBERG, Petitioner,
v.
The EIGHTH JUDICIAL DISTRICT COURT of the State of Nevada IN AND FOR THE COUNTY OF CLARK and the Honorable Judges Thereof, Respondents.
No. 10070.
Supreme Court of Nevada.
December 13, 1977.
Aubrey Goldberg, pro se.
Dickerson, Miles & Pico, Las Vegas, for respondents.

OPINION
BATJER, Chief Justice.
In this original proceeding in prohibition, petitioner seeks to prohibit the Eighth Judicial District Court from closing its rule-making meeting to the public. Respondent court scheduled a meeting for September 1, 1977, to consider, inter alia, "proposed rules regarding the selection and duties of trial jurors ... and ... administrative orders in respect thereto." On August 30, 1977, petitioner obtained an agenda of the scheduled meeting and indicated his desire to attend. Respondent court, through its court administrator, advised petitioner that the meeting was closed to the public. On September 1, 1977, petitioner sought a writ of prohibition, and we stayed all rule-making meetings of the Eighth Judicial District Court pending disposition of his petition.
Petitioner contends NRS ch. 241, as amended by 1977 Nev.Stats. ch. 527, requires the courts of Nevada, when considering rules or administrative orders, to hold open meetings and allow all persons to attend.[1] Therefore, he argues respondent court had no authority to close its rule-making *522 meeting to the public. We disagree. In our view, NRS ch. 241, as applied to judicial bodies, is an unconstitutional infringement on the inherent powers of the judiciary which violates the doctrine of separation of powers.[2]
"It is fundamental to our system of government that the separate powers granted the executive, legislative and judicial departments be exercised without intrusion." City of No. Las Vegas v. Daines, 92 Nev. 292, 294, 550 P.2d 399, 400 (1976).
Pursuant to this doctrine, it is clear that the judiciary, as a coequal branch of government, has inherent powers to administer its affairs, see City of No. Las Vegas v. Daines, cited above; Dunphy v. Sheehan, 92 Nev. 259, 549 P.2d 332 (1976); Sun Realty v. District Court, 91 Nev. 774, 542 P.2d 1072 (1975); Young v. Board of County Comm'rs, 91 Nev. 52, 530 P.2d 1203 (1975); State ex rel. Kitzmeyer v. Davis, 26 Nev. 373, 68 P. 689 (1902), which include rule-making and other incidental powers reasonable and necessary to carry out the duties required for the administration of justice.[3] Any infringement by the legislature upon such power is in degradation of our tripartite system of government and strictly prohibited. See Dunphy v. Sheehan, cited above.
Although these inherent powers exist independent of constitutional or statutory grant, see State ex rel. Gentry v. Becker, 351 Mo. 769, 174 S.W.2d 181 (1943); State ex rel. Andrews v. Superior Court of Maricopa County, 39 Ariz. 242, 5 P.2d 192 (1931), we have recognized that "[t]he legislature may, by statute, sanction the exercise of inherent powers by the courts, and the courts may acquiesce in such pronouncements by the legislature, ..." Lindauer v. Allen, 85 Nev. 430, 434, 456 P.2d 851, 854 (1969).[4]Cf. Burney v. Lee, 59 Ariz. 360, 129 P.2d 308 (1942). Even so, we remain ever mindful that such statutes are merely legislative sanctions of independent rights already belonging to the courts, Lindauer v. Allen, cited above, and where, as here, those statutes attempt "to limit or destroy an inherent power of the courts, [such statutes] must fail." Lindauer v. Allen, 85 Nev. at 434, 456 P.2d at 854.[5]
*523 Petitioner, in an attempt to circumvent this precept, contends NRS ch. 241, as amended, neither limits nor destroys the inherent powers of the court, but merely represents a permissible overlapping of the powers granted to the separate branches of government.
We have previously acknowledged the legislature's power to exercise overlapping ministerial functions, provided those functions could be logically and legitimately traced to a basic source of power. See Galloway v. Truesdell, 83 Nev. 13, 422 P.2d 237 (1967). However, judicial rule-making powers cannot logically and legitimately be traced to the source of legislative power (Article 4 of the Nevada Constitution). Indeed, the only logical and legitimate source of such power is Article 6.[6]Cf. Galloway v. Truesdell, cited above; State v. Fields, 85 Wash.2d 126, 530 P.2d 284 (1975).
In summary, the inherent power of the judicial department to make rules is not only reasonable and necessary, but absolutely essential to the effective and efficient administration of our judicial system, and it is our obligation to insure that such power is in no manner diminished or compromised by the legislature. Eminent legal scholars long ago propounded cogent arguments against relying upon legislative management of judicial affairs.
[L]egislatures are not held responsible in the public eye for the efficient administration of the courts and hence do not feel pressed to constant re-examination of procedural methods. . . . Court rules, on the other hand, are flexible in application, easy of clarification, and rapid of amendment should amendment be required. They are the work of an agency whose whole business is court business and for whom court efficiency can become a major interest, an agency keenly aware of the latest problems and fully capable of bringing to bear in their early solution a long and solid experience.
Levin and Amsterdam, Legislative Control Over Judicial Rule-Making: A Problem in Constitutional Revision, 107 U.Penn.L.Rev. 1, 10 (1958). See generally, Pound, The Rule-Making Power of the Courts, 12 A.B.A.J. 599 (1926).
Accordingly, the petition for prohibition must be, and is hereby, denied, and the stay order is dissolved.
MOWBRAY, THOMPSON and MANOUKIAN, JJ., concur.
GUNDERSON, Justice, concurring:
Although I do not disagree with the reasoning articulated by our brother Batjer, and agree with the result reached thereby, I desire to add two observations.
First, some may question whether this proceeding presents an actual controversy between petitioner and the judges of the Eighth Judicial District Court. See Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). However, even if it does not, in this instance I perceive no obstacle to our issuing an opinion, since its subject concerns court administration. At the general election held in November of 1976, the people expressly assigned this Court and its Chief Justice the power and duty to supervise administration of Nevada's court system. See Nev.Const. art. 6, as amended. Thus, it appears proper to issue an opinion required for that purpose, even absent any true legal controversy, although our advice might not be justified as an exercise of our judicial function.
Second, theories of inherent powers aside, it appears from the express grant of constitutional authority to administer Nevada's court system that the public intended this Court, not the Legislature, to see that rules and administrative orders are promulgated in ways consistent with the public interest and with the judiciary's needs. Under procedures this court established years ago, standing rules of practice suggested by district *524 court judges, and tentatively approved by us, do not become binding until published and until 60 days have elapsed.[1] Thus, long before our Legislature's recent concern for open government, this Court established an orderly means to allow lawyers and the public an opportunity to provide input and to offer objections concerning district court rules. The means is, so far as I can see, well conceived. It permits district judges in multi-judge districts fundamentally the same opportunity as those in single-judge districts to seek rule changes from this court, in an expeditious manner. It provides the public in multi-judge districts the same right to raise objections to this court.
In summary, then, without any legislative mandate, standing rules for district courts currently are promulgated in a manner which is orderly and open, but tailored to the peculiar needs of the court system. "Administrative orders"  if this term be applied to orders governing day-to-day administration  are left, as they must be, to the good judgment of the district court judges. Therefore, if the Legislature has indeed sought to govern the judiciary by the statute in question, it has structured a solution for which there is no problem.
Of course, our court system suffers other problems, many of which derive from the excessive press of business. None of the real problems the district courts face would be alleviated by imposing additional strictures upon judges in multi-judge districts, thereby limiting their ability to meet freely, whenever judicial business permits, to discuss possible solutions to administrative problems.
NOTES
[1] NRS 241.020(1) provides:

"Except as otherwise specifically provided by statute, all meetings of public bodies shall be open and public, and all persons shall be permitted to attend any meeting of these bodies."
NRS 241.030(3) provides, in pertinent part:
"3. This chapter does not:
"(a) Apply to judicial proceedings, except those at which consideration of rules or deliberation upon the issuance of administrative orders are conducted."
[2] Nev.Const. art. 3, § 1, provides:

"The Powers of the Government of the State of Nevada shall be divided into three separate departments,  the Legislative,  the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases herein expressly directed or permitted."
[3] See McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); Dunphy v. Sheehan, cited above; Matter of Salary of Juvenile Director, 87 Wash.2d 232, 552 P.2d 163 (1976); State ex rel. Lynch v. Dancey, 71 Wis.2d 287, 238 N.W.2d 81 (1976); O'Coin's, Inc. v. Treasurer of County of Worcester, 362 Mass. 507, 287 N.E.2d 608 (1972); Nassif Rlty. Corp. v. National Fire Ins. Co. of Hartford, 107 N.H. 267, 220 A.2d 748 (1966); Schavey v. Roylston, 8 Ariz. App.2d 574, 448 P.2d 418 (1968); Burton v. Mayer, 274 Ky. 263, 118 S.W.2d 547 (Ky. App. 1938). See generally, Commentary, Inherent Power and Administrative Court Reform, 58 Marquette L.Rev. 133 (1975); Mallard, Inherent Power of the Courts of North Carolina, 10 Wake Forest L.Rev. 1 (1974); Dowling, The Inherent Power of the Judiciary, 21 A.B.A.J. 635 (1935).
[4] See, for example, the following statutes which codify our inherent rule-making powers:

NRS 2.120(1), which provides, in pertinent part:
"The supreme court may make rules not inconsistent with the constitution and laws of the state for its own government, the government of the district courts, and the government of the State Bar of Nevada."
NRS 3.025(2) which provides, in pertinent part:
"The chief judge [of the district court] shall:
"...
"(c) Adopt such rules and regulations as are necessary for the orderly conduct of court business."
[5] Cf. Volpert v. Papagna, 85 Nev. 437, 456 P.2d 848 (1969); State ex rel. Watson v. Merialdo, 70 Nev. 322, 268 P.2d 922 (1954); State v. Smith, 84 Wash.2d 498, 527 P.2d 674 (1974); Sharood v. Hatfield, 210 N.W.2d 275 (Minn. 1973); Sams v. Olah, 225 Ga. 497, 169 S.E.2d 790 (1969); Holm v. State, 404 P.2d 740 (Wyo. 1965); Burney v. Lee, cited above. Arnett v. Meade, 462 S.W.2d 940 (Ky.App. 1971). See generally, Wigmore, Legislature Has No Power in Procedural Field, 20 J.Am.Jud.Soc'y 159 (1936).
[6] Nev.Const. art. 6, § 1, provides, in pertinent part:

"The Judicial power of this State shall be vested in a court system, comprising a Supreme Court, District Courts, and Justices of the Peace."
[1] NRCP 83 provides:

"RULE 83. RULES BY DISTRICT COURTS
"Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the Supreme Court, but shall not become effective until sixty days after approval by the Supreme Court and publication. In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules."