TAHOE REGIONAL PLANNING AGENCY, Plaintiff/Appellee

v.

Brian McKAY, Attorney General of the State of Nevada, Defendant/Appellant.

CA No. 84–2425.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1985.

Decided Aug. 19, 1985.

**536**

Brian McKay, Atty. Gen., Carson City, Nev., for plaintiff-appellee.

Louis R. Doescher, Gary Owen, Shaw, Heaton, Doescher & Owen, Ltd., Carson City, Nev., for defendant-appellant.

Before ANDERSON and CANBY, Circuit Judges, and NIELSEN * District Judge.

CANBY, Circuit Judge:

The Attorney General of Nevada, appellant here, challenges the district court's holding that Nevada's "open meeting" law does not preclude a public agency from conferring privately with its counsel on matters within the scope of the attorney-client privilege. 590 F.Supp. 1071. We affirm.

## BACKGROUND

The Tahoe Regional Planning Compact (TRPC), Pub.L. No. 96–551, 94 Stat. 3233

(1980), a congressionally-ratified interstate compact designed to control and manage the development and use of properties within the Lake Tahoe basin, established the Tahoe Regional Planning Agency (TRPA). The TRPC provides that

> [a]ll [TRPA] meetings shall be open to the public to the same extent required by the law of the State of California or the State of Nevada, whichever imposes the greater requirements, applicable to local governments at the time such meeting is held.

Art. III(d), 94 Stat. at 3237.

TRPA brought suit seeking declaratory and injunctive relief barring appellant Brian McKay, Nevada's Attorney General, from enforcing Nevada's open meeting law, NRS § 241.020, against closed meetings between TRPA and its counsel.[1] After denying appellant's motion to dismiss, the district court held, on cross-motions for summary judgment, that Nevada's open meeting law permits a public agency to confer in private with its counsel on matters properly within the scope of the attorney-client privilege.[2] The Attorney General appeals.

## DISCUSSION [3]

### A. Jurisdiction

■ The TRPC confers concurrent jurisdiction upon the courts of California, Nevada, and the United States in suits "arising under" the Compact.[4] The Attorney Gen-

---

* The Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation.

1. Both parties, as well as the district court, agree that Nevada's statute imposes the more stringent requirements.

2. The court's summary judgment for TRPA included several conditions designed to insure that its recognition of an exception for attorney-client meetings is not abused: (1) any closure must be made from an open meeting which has been properly noticed, and the notice must declare the intention to close the meeting for the purpose of conferring privately with counsel on a specific agenda item; (2) TRPA shall keep written minutes of each closed meeting; and (3) the minutes of any meeting which is closed to confer with counsel become public records

when the litigation which it concerned is concluded, averted, or the need for confidentiality no longer exists.

3. There are no disputed facts involved in this litigation. The district court granted summary judgment for plaintiff entirely on its interpretation of state law. Questions of state law are reviewed *de novo*. *Matter of McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

4. Article VI(j), 94 Stat. at 3247, provides that "[l]egal actions arising out of or alleging a violation of the provisions of this compact ... may be filed and the provisions of this subdivision apply equally in the appropriate courts of California and Nevada and of the United States."

eral contends that TRPA's action arises solely under state law and not under the Compact, and that the district court consequently erred in denying his motion to dismiss for lack of subject matter jurisdiction. We disagree.

The Attorney General concedes that the district court would have jurisdiction, in the absence of agreement by the parties, to determine which state open meeting provision imposes the greater requirements. Since both parties agree, however, that Nevada law controls, appellant argues that the sole remaining issue—*viz,* construction of Nevada's open meeting statute—is entirely a question of state law.

It is hardly novel, however, "for Congress to direct that state law be used to fill the intertices of federal law." *Moor v. County of Alameda,* 411 U.S. 693, 701 & n. 11, 93 S.Ct. 1785, 1791 & n. 11, 36 L.Ed.2d 596 (1973) (citing, as examples, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80; Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–43; and provisions of the Assimilative Crimes Act, 18 U.S.C. §§ 7, 11). Here, the law of the state imposing the greater requirements (which both the parties and district court agree is Nevada's) is expressly incorporated into the TRPC. Since congressional consent has transformed this compact into a law of the United States, *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 507 F.2d 517, 519 (9th Cir.1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975), the dispute here arises under federal law, not solely under Nevada law. A suit to enjoin enforcement of a state law expressly incorporated in the TRPC, against a public body created by the TRPC,

is a suit "arising under" the Compact. *See* C. Wright, *The Law of Federal Courts* 98 (4th ed. 1983); *League to Save Lake Tahoe,* 507 F.2d at 522.

### B. Nevada's Open Meeting Law

Nevada's open meeting law requires that [e]xcept as otherwise specifically provided by statute, all meetings of public bodies shall be open and public, and all persons shall be permitted to attend any meeting of these bodies.

NRS § 241.020(1).

Nevada accepts the familiar principle that "[w]hen presented with a question of statutory interpretation, the intent of the legislature is the controlling factor and, if the statute under consideration is clear on its face, a court cannot go beyond the statute in determining legislative intent. If, however, the statute is ambiguous, it can be construed 'in line with what reason and public policy would indicate the legislature intended. . . .' 'A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses.'" *Robert E. v. Justice Court of Reno Township,* 664 P.2d 957, 959 (Nev.1983).

■ Nevada's open meeting law includes no express exception for meetings between an agency and its counsel. Its law requires public meetings "except as otherwise specifically provided by statute." Because this proviso is reasonably susceptible of more than one interpretation,[5] the Nevada measure is ambiguous. As a result, we turn to extrinsic aids to ascertain legislative intent.[6]

---

**5.** Open meeting statutes containing essentially identical provisos have been construed differently. *Compare Laman v. McCord,* 245 Ark. 401, 432 S.W.2d 753 (1968) (refusing, in view of "except as otherwise provided" clause, to construe state's open meeting law to include exception for meetings between a public agency and its counsel), *with Minneapolis Star & Tribune Co. v. Housing & Redevelopment Authority,* 310 Minn. 313, 251 N.W.2d 620 (1976) (implying exception). *See also Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors,* 263 Cal.App.2d 41, 69 Cal.Rptr. 480 (1968) (im-

plying exception); *Neu v. Miami Herald Publishing Co.,* 462 So.2d 821 (Fla.1985) (refusing to imply exception).

**6.** Where statutory language is unclear, canons of construction typically authorize recourse to extrinsic aids such as legislative history in construing legislative intent. *See generally* 2A Singer, *Sutherland on Statutory Construction* § 48.-01 *et seq.* (4th ed. 1984). In *Berman v. Riverside Casino Corp.,* 247 F.Supp. 243 (D.Nev.1964), *aff'd,* 354 F.2d 43 (9th Cir.1965), however, the court held that "[t]he rule of statutory interpre-

**(1)** *Extrinsic Aids in Statutory Construction*

In support of his contention that the legislature did not intend to leave latitude in the law for judicial recognition of an attorney-client exception, the Attorney General directs our attention to unadopted proposals, administrative construction, and alleged legislative acquiescence. Each is unpersuasive.

■ To begin with, the Attorney General suggests that the legislature's rejection of proposed amendments to the open meeting law which would have recognized an explicit statutory exemption for meetings between a public agency and its counsel permits us to infer that the legislature did not intend to permit such an exception. In this case, however, we are unable to draw such an inference.

■ We recognize that it is well-settled that the rejection of amendments offered in the course of enactment is often probative in ascertaining legislative intent. 2A Sands, *Sutherland on Statutory Construction* § 48.18; Willard & MacDonald,

"The Effect of an Unsuccessful Attempt to Amend a Statute," 44 Cornell L.Q. 336, 341 (1958). At the same time, caution must be exercised in using the rejection by a legislature of proposed amendments as an aid in interpreting measures actually adopted. 2A Sands, *Sutherland of Statutory Construction* § 48.18. In particular, care must be taken to distinguish unsuccessful attempts to amend proposed legislation during the process of enactment from unsuccessful attempts to amend a measure passed by a previous legislative session. Whatever aid the former may furnish in ascertaining intent, "[a]ction on a proposed amendment is not a significant aid to interpretation of an act that was passed years before." *Id.* at 341; Willard & MacDonald, 44 Cornell L.Q. at 339.

Nevada's open meeting law was initially adopted in 1960; the unadopted amendments to which appellant refers were considered in 1977. Viewed as attempts to amend previously enacted legislation, these unadopted proposals are entitled to little weight. Yet even The Attorney General contends, however, that the 1977 amendments were a "comprehensive revision,"

---

tation in Nevada requires us to look to the four corners of the enrolled bill *to determine legislative intent* and we are entitled to no assistance from arguments, reports, committee hearings and like proceedings leading up to the adoption of the law. *State ex rel. Bartlett v. Brodigan,* 37 Nev. 245, 141 P. 988." 247 F.Supp. at 245–46 (emphasis added).

TRPA invokes *Berman* in an effort to block our consideration of the open meeting law's legislative history, history upon which appellant principally relies. Should this "enrolled bill" rule remain the law in Nevada, it is true that traditional recourse to legislative history is foreclosed. It is also true that the rule has apparently never been directly repudiated or overruled. Nevertheless, a reading of recent Nevada Supreme Court cases suggests sufficient, if *sub silentio,* erosion of this rule for us to conclude that the district court's observation in *Berman* no longer accurately reflects Nevada state law, assuming it ever did. (At common law, the enrolled bill rule "held that the enrolled bill was conclusive evidence of statutory enactment and that no other evidence was admissible to establish that the bill was not lawfully enacted." 1 *Sutherland on Statutory Construction, supra,* § 15.03 at 410. This rule is narrower, and readily distinguishable, from *Berman's* holding that only the enrolled bill is relevant in ascertaining legislative intent. The latter, though,

does parallel the traditional practice in British courts. *See* C.B. Nutting, "The Relevance of of Legislative Intention Established by Extrinsic Evidence," 20 B.U.L.Rev. 601 (1940), *reprinted in* 3 *Sutherland on Statutory Construction, supra,* at 609–25.)

Citing *Bartlett v. Brodigan,* the same case upon which the district court relied in *Berman,* the Nevada Supreme Court recently noted that "*[i]f possible,* legislative intent should be determined by looking at the act itself." *List v. Whisler,* 660 P.2d 104, 107 (Nev.1983) (emphasis added). Although the term "legislative history" has been used, in Nevada, to refer simply to prior enrolled legislation, *see, e.g., Ewing v. Fahey,* 86 Nev. 604, 472 P.2d 347, 349 (1970), the Court has more recently entertained extrinsic sources such as committee reports, legislative testimony, and the like. *See, e.g., Robert E. v. Justice Court of Reno Township,* 664 P.2d 957, 959 (Nev.1983); *Kell v. Nevada,* 96 Nev. 791, 618 P.2d 350, 351 n. 1 (1980); *Acklin v. McCarthy,* 96 Nev. 520, 612 P.2d 219, 221 (1980). Since consideration of this material would have been barred by Nevada law as expressed in *Berman,* we conclude that where statutory ambiguity makes it difficult clearly to ascertain legislative intent, recourse to extrinsic sources is not impermissible under Nevada precedent.

which justifies our treating unadopted proposals during the 1977 legislative session as we would amendments rejected during the initial session of enactment. Even if that is so, we are still not convinced that we may infer from the failure of these proposed amendments a clear and unambiguous legislative intent to bar judicial recognition of an implied exception permitting closed meetings between a public agency and counsel.

Although the legislature rejected amendments which would have permitted closed meetings, the 1977 amendments are unilluminated by committee or conference reports that ordinarily shed light on legislative intent. *Cf. Norwegian Nitrogen Co. v. United States*, 288 U.S. 294, 306, 53 S.Ct. 350, 355, 77 L.Ed. 796 (1933) (Cardozo, J.) (report makes clear that Congress rejected proposal to which it was hostile, *United States v. Pfitsch*, 256 U.S. 547, 552, 41 S.Ct. 569, 570, 65 L.Ed. 1084 (1921) (Brandeis, J.) (reason for rejection of proposed amendment plain from statement of House conferees). Without such material, we feel constrained to agree with the California Court of Appeal's observation in construing rejected amendments to California's open meeting provision: "[t]he light shed by such unadopted proposals is too dim to pierce statutory obscurities." *Sacramento Newspaper Guild*, 69 Cal.Rptr. at 492.

 Appellant's reliance upon administrative construction is also misplaced. First, although Nevada's Attorney General may have interpreted the statute as requiring public meetings between an agency and its counsel, opinions of the Attorney General are not binding upon the courts. *Weston v. County of Lincoln*, 98 Nev. 183, 643 P.2d 1227, 1228 (1982); *Cannon v. Taylor*, 88 Nev. 89, 493 P.2d 1313, 1314 (1972). Second, it is not accurate to say, as the Attorney General does, that the legislature has "ma[de] the Attorney General respon-

sible for the administration and interpretation of Nevada's Open Meeting Law." The statute simply vests the Attorney General with investigative and prosecutorial authority; whether the act has, in fact, been violated remains a determination for the courts. *See* NRS §§ 241.037(1), 241.040(4). Accordingly, the Attorney General's interpretation of the statute is not entitled to the sort of deference generally accorded an administrative agency's interpretation of its own operating legislation or regulations. *See Folio v. Briggs*, 656 P.2d 842, 844 (Nev.1983).[7]

 The Attorney General's argument based on legislative acquiescence is no more convincing. He contends that the failure of the legislature expressly to overrule his interpretation of the statute, after having been apprised of it, is tantamount to implicit approval. As previously noted, however, the Attorney General's opinions are non-binding. *Weston, supra; Cannon, supra.* As a result, we cannot infer that the legislature "acquiesced" by failing to address a construction which, under Nevada law, need not be followed by the courts.

(2) *Open Meetings and the Attorney-Client Privilege*

In implying an exception to the literal dictates of the open meeting law for meetings between an agency and its counsel, the district court principally relied upon two supports. The first was a Nevada Supreme Court decision refusing, in a related context, literally to construe the law's statute's clause limiting exceptions to those "otherwise specifically provided." The second was the time-honored tradition of attorney-client confidentiality. On the second ground, we affirm.[8]

 While it is true that Nevada recognizes an evidentiary attorney-client privilege which is testimonial in nature, NRS §§ 49.015–.115, it does not follow, as the

7. While the Attorney General has issued opinions and pamphlets construing the statute to preclude a public agency from closing its meetings with counsel, he conceded at oral argument that this material amounts simply to guidelines

with no binding effect, not administrative regulations with the force of law.

8. In *Goldberg v. District Court*, 93 Nev. 614, 572 P.2d 521 (1977), the Court held that, notwithstanding the statute's "except as otherwise provided" clause, the open meeting law could not

Attorney General insists, that Nevada law protects attorney-client communications only from testimonial compulsion.[9] Although the attorney-client privilege statute standing by itself is purely testimonial, when it is construed along with the Open Meeting Law its scope is ambiguous.[10] We may therefore interpret the privilege statute " 'in line with what reason and public policy would indicate the legislature intended.' " *Robert E.*, 664 P.2d at 959. As the district court observed, the rule of evidence precluding unauthorized disclosure is simply a corollary of the basic principle of attorney-client confidentiality long-recognized at common law.[11]

■ Implicit in the protection against testimonial compulsion is recognition of the importance of attorney-client confidentiality. As the Supreme Court observed nearly a century ago, "[legal] assistance can only be safely and readily availed of when free from the consequences or apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888); *accord Upjohn*, 449 U.S. at 389,

101 S.Ct. at 682. The Nevada cases cited by the Attorney General similarly recognize that the state's evidentiary privilege proceeds from, and is predicated upon, the need for confidentiality: "Hence, for the benefit and protection of the client, the law places the seal of secrecy upon all communications made to the attorney in the course of his professional employment...." *Mitchell v. Bromberger*, 2 Nev. 345, 348 (1866). As the California Court of Appeal observed in construing California's open meeting provision,

> [p]laintiff's do not dispute the availability of the lawyer-client privilege to public officials and their attorneys. They view it as a barrier to testimonial compulsion, not a procedural rule for the conduct of public affairs. The view is too narrow. The privilege against disclosure is essentially a means for achieving a policy objective of the law. The objective is to enhance the value which society places upon legal representation by assuring the client full disclosure to the attorney unfettered by fear that others will be

be applied to court rule-making sessions without offending the state constitution (specifically, the principle of separation of powers). The district court invoked *Goldberg* for the general proposition that the open meeting law's "except as otherwise specifically provided" clause need not be construed literally. In fact, the *Goldberg* holding is much narrower than that, resting, as it does, upon an identifiable constitutional interest. Its acknowledged antiquity aside, the attorney-client privilege, by contrast, rests in Nevada upon positive and common law. *See* NRS §§ 49.015–.115; *Mitchell v. Bromberger*, 2 Nev. 345, 348 (1866). We do not mean to imply, however, that TRPA could avail itself of no state or federal constitutional argument were the Nevada legislature unequivocally to bar closed meetings between a public agency and its counsel. In the criminal context, the sixth amendment right to effective assistance of counsel undoubtedly insures a modicum of attorney-client confidentiality. While the sixth amendment is inapplicable in the civil context, it is at least arguable that where the right to retain civil counsel is recognized, *see* L. Tribe, *American Constitutional Law* 553 (1978) (no fixed rule regarding the right to counsel in civil proceedings has developed), there exists a point at which state interference with the presumptive confidentiality of such communications might implicate constitutional due process. *But cf. Neu*, 462 So.2d at 825 (rejecting alleged due

process right to consult privately with counsel urged by city council). Given our statutory conclusion, however, we need not enter this largely uncharted constitutional area.

9. It is undisputed that public bodies such as the TRPA are "clients" within the meaning of the privilege. NRS § 49.045.

10. The general rule of privilege in Nevada ("[a] client has a privilege to refuse to disclose ... confidential communications" with his attorney, NRS § 49.095) is ambiguous when construed with an open meeting law which, if literally interpreted, would compel disclosure. Similarly, a communication is defined as "confidential" "if it is not intended to be disclosed...." NRS § 49.055. Given an apparent conflict between the plain language of statutes, we must pursue legislative intent in an effort to harmonize provisions, wherever possible.

11. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981), citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). The common law is expressly incorporated into Nevada law insofar as consistent with federal and state constitutional and positive enactments. NRS § 1.030.

informed. The privilege serves a policy assuring private consultation. If client and counsel must confer in public view and hearing, both privilege and policy are stripped of value.

*Sacramento Newspaper ·Guild,* 69 Cal. Rptr. at 489; *accord Minneapolis Star,* 251 N.W.2d at 624–25. *But see Laman, supra; Neu, supra.*

In our view, Nevada's statutory rule against testimonial compulsion is simply an evidentiary manifestation of a broader, more basic principle. To construe the privilege purely as an evidentiary rule not only emasculates that rule; it ignores the reason for the rule itself.

 Absent a supervening interpretation from the Nevada state courts,[12] we therefore conclude that Nevada's Open Meeting Law, construed against the background of Nevada's attorney-client privilege, contains an implied exception for meetings between public bodies and their counsel, subject to the limitations specified by the district court.

AFFIRMED.

---

12. Nevada does not have a mechanism permitting certification from the federal courts. *See* *generally* C. Wright, *supra,* § 52 at 313–15.